479 A.2d 1041

**COMMONWEALTH of Pennsylvania**

v.

**Scott Charles DAVIS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1984.

Filed July 13, 1984.

Petition for Allowance of Appeal Granted Feb. 7, 1985.

552

John R. Carroll, Philadelphia, for appellant.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

This matter is before the court on the appeal of Scott Charles Davis from a mandatory life sentence [1] after conviction of first degree murder.[2] Appellant maintains that under a section of the Juvenile Act,[3] his judgment of sentence must be reversed and his case remanded for proceedings under the Mental Health Procedures Act (hereinafter "MHPA").[4]

On June 7, 1980, the appellant shot and killed Roderick Kotchin, who had been his friend, employer, and neighbor. At the time of the incident, appellant was fifteen years of age. Appellant was arrested under the criminal system, and his counsel filed a petition for transfer of the case from criminal court to juvenile court in accordance with § 6322(a) of the Juvenile Act.

On September 30, 1980, a hearing was held within the criminal system on appellant's transfer petition. Expert testimony offered by the appellant as well as the Common-

1. 42 Pa.C.S. § 9711.

2. 18 Pa.C.S. § 2502.

3. 42 Pa.C.S. § 6301 *et seq.*

4. 50 P.S. § 7101 *et seq;* Act of July 9, 1976, P.L. 817, No. 143, § 101 *et seq.*

wealth indicated that appellant was mentally ill. The lower court issued its opinion and order on November 10, 1980, denying transfer to the juvenile system. That opinion stressed that appellant had failed to prove that he was amenable to treatment within the juvenile system. 42 Pa. C.S. § 6355(a)(4)(iii)(A). Citing *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), the lower court found that appellant had not established that he could be rehabilitated prior to the expiration of the juvenile system's jurisdiction when appellant reached twenty-one years of age.

On December 22, 1980, appellant filed a motion for re-hearing of his petition to transfer the proceedings to the juvenile system. The motion alleged that appellant was even more seriously ill than had previously been believed. Appellant argued both that: (1) under 42 Pa.C.S. § 6355(a)(4)(iii)(B), transfer to the juvenile system must be made upon a finding that a child charged with murder is mentally ill and committable, and (2) under 42 Pa.C.S. § 6356, where any hearing indicates that a child is mentally ill and committable, the court must proceed under the MHPA.

After argument, the lower court entered an order and memorandum opinion denying appellant's rehearing peti-tion. That opinion of March 13, 1981, discussed appellant's first argument and held under *Commonwealth v. Pyle, supra,* that even a finding that a child is committable does not, per se, require transfer to the juvenile system.[5] The lower court's memorandum opinion did not address appel-lant's second argument under 42 Pa.C.S. § 6356.

The appellant was tried on May 4–7, 1981, and the jury found him guilty of first degree murder. It is significant that appellant never contended that his mental illness caused him to be either incompetent to stand trial or ren-

---

5. Contrary to appellant's assertions, the lower court *never* found as a fact that appellant was committable. The lower court found only that appellant was suffering from a mental illness, which might well support a finding of commitment.

dered him legally insane.[6] Appellant filed a motion in arrest of judgment on the basis that § 6356 of the Juvenile Act mandated a *separate procedure and disposition* of all mentally ill children, and that he should not have been prosecuted in the criminal system. Relying on the opinion already filed pertaining to appellant's status, the lower court denied the motion in arrest of judgment.

Appellant was sentenced to life imprisonment at a state correctional facility, and this timely appeal followed. Herein, appellant specifically does *not* contend that the lower court erred in refusing to transfer this case to the juvenile system. Appellant argues, rather, that the lower court erred in failing to proceed under the MHPA once it was evident at the September 30, 1980, hearing, that he was mentally ill. We note that appellant subsequently filed for *voluntary* commitment in accordance with § 7407 of the MHPA. The record before us is silent as to whether or not appellant has been voluntarily committed and transferred to a mental health facility.

The crux of this appeal involves § 6356 of the Juvenile Act, which appellant attempts to take advantage of. That statute provides:

### § 6356. Disposition of mentally ill or mentally retarded child

If, at a dispositional hearing of a child found to be delinquent *or at any hearing*, the evidence indicates that the child may be subject to commitment or detention under the provisions of the act of October 20, 1966 (3rd Sp.Sess., P.L. 96, No. 6), known as the 'Mental Health and Mental Retardation Act of 1966,' or the act of July 9, 1976 (P.L. 817, No. 143), known as the 'Mental Health Procedures Act', *the court shall proceed* under the provisions of the appropriate statute. (Footnotes omitted) (emphasis added).

6. At trial, evidence of appellant's mental illness was offered only to show diminished capacity; i.e., that he could not have formed an intent to kill or malice.

Appellant asserts that the words "or at any hearing" encompass a hearing requesting transfer to the juvenile court system. Thus, he argues that since the evidence of appellant's September 30, 1980, transfer hearing indicated that appellant was mentally ill and subject to commitment, the court had to proceed under the MHPA. Appellant contends that once the lower court refused to follow the command of § 6356, the remedy is a reversal of his conviction and a remand for proceedings under the MHPA. Furthermore, he reasons that we need not worry about the juvenile court losing jurisdiction on appellant's twenty-first birthday, for the reason that a commitment under the MHPA continues until treatment is successful. The underlying theme of appellant's position is that, by enactment of § 6356, the legislature created a special category for all mentally ill and mentally retarded children—a category which automatically deprives the juvenile and criminal courts of their respective jurisdictions in favor of straight civil commitment with its singular emphasis on curing and caring for the distinct problems of the mentally ill and mentally retarded.

While appellant's argument is ingenious, we find that: first, § 6356 can only be utilized *within* the confines of the Juvenile Act; secondly, that even if § 6356 could be relied upon by appellant, the hearing of September 30, 1980, did not indicate that appellant might be subject to commitment under the MHPA; and, thirdly, that even if § 6356 could be relied upon and appellant had been committable, the relief of reversal and remand would be inappropriate.

Appellant attempts to benefit from § 6356 of the Juvenile Act without initially invoking the jurisdiction of the Juvenile Act itself. He points to the language of § 6356 which appears to trigger its application whenever "any hearing" indicates that a child may be subject to commitment. Admittedly, the legislature's designation of "any hearing" is ambiguous, especially since it follows the precise designation of a "dispositional hearing of a child found to be a delinquent." This lack of precision, however does not sup-

port a construction of § 6356 that it reaches *beyond* the strict perimeter of the Juvenile Act of which it is a part.

 We begin with the principle that individual provisions in a comprehensive legislative scheme should not be read abstractly, but rather with a view to their place in the entire structure. *Sohmer v. Sohmer,* 318 Pa.Super. 500, 465 A.2d 665 (1983). One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children—but for only those children who come *within* the provisions of the Juvenile Act. 42 Pa.C.S. § 6301(b)(1). Section 6356 is clearly an implementation of this goal, and so appellant must first demonstrate that he comes within the provisions of the Juvenile Act.

 Section 6303(a) of the Juvenile Act defines its scope: This chapter [The Juvenile Act] shall apply exclusively to the following:

(1) Proceedings in which a child is alleged to be delinquent or dependent.

(2) Transfers under section 6322 (relating to transfer from criminal proceedings).

(3) Proceedings arising under Subchapter E (relating to dispositions affecting other jurisdictions).

(4) Proceedings under the Interstate Compact on Juveniles, as set forth in section 731 of the act of June 13, 1967 (P.L. 31, No. 21), known as the 'Public Welfare Code.' (Footnote omitted).

It is manifest that appellant does not fit within subsection (1), (3), or (4) above. While at first glance, appellant's hearing under § 6322 to *determine* transfer appears to qualify under subsection (2) above, the Juvenile Act attaches to transfers only *after* a case has been transferred:

Where the petition alleges conduct which if proven would constitute murder, the court shall require the offense to be prosecuted under the criminal law and procedures,

except where the case *has been transferred* pursuant to section 6327....

42 Pa.C.S. § 6355(e) (emphasis added).

Thus, the hearing of September 30, 1980, did not qualify as one of the proceedings to which the protections of the Juvenile Act attached. Since appellant does not now contend that his case should have been transferred to the juvenile system, he has no basis for his reliance on § 6356. We cannot interpret § 6356 out of its context in the comprehensive scheme of the Juvenile Act.

■ We note that by interpreting § 6356 to apply only to hearings *within* the juvenile court's jurisdiction,[7] the mentally ill child charged with murder and who is not transferred out of the criminal system, is not left without attention to his special needs. The criminal system provides a mentally ill person with safeguards which are tailored to the type and degree of a defendant's mental illness. A defendant's mental illness may: preclude his criminal responsibility (legal insanity), diminish his capacity as to certain crimes, temporarily prevent him from being prosecuted (incompetent to stand trial), or afford him mental health treatment in conjunction with sentencing (guilty but mentally ill—42 Pa.C.S. § 9727, 50 P.S. § 7405). Furthermore, a convicted

7. We need not determine which hearings *within* the jurisdiction of the juvenile system were intended to trigger § 6356 as "any hearing". Interpretation of the words "any hearing" to mean virtually every hearing under the Juvenile Act, would have the undesirable effect of making superfluous the precise designation of "dispositional hearings of children found to be delinquent." *See, Matter of Employees of Student Services, Inc.,* 495 Pa. 42, 432 A.2d 189 (1981) (whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage). The history of this section and its derivation from § 29 of the *Proposed Juvenile Act,* Joint State Government Commission, Harrisburg, Pa., 1970, and § 35 of the *Uniform Juvenile Court Act,* 9A UNIFORM LAWS ANNOTATED (1979), suggest, however, that hearings to transfer a child *to adult court* were the only other hearings which were intended to invoke mental health proceedings. This design meshes with the provisions contained in those acts for transfer to adult court, which require a finding that the child is not committable to a mental institution. Unfortunately, the legislative history is silent as to why § 6356 and its almost identical predecessor under the prior Juvenile Act, Act of December 6, 1972, P.L. 1464 No. 333, adopted the catchall language "or at any hearing."

person may himself request commitment under the MHPA. 50 P.S. § 7407.

Both the juvenile and criminal systems, therefore, have been designed to deal with the mentally ill who are subject to their respective jurisdiction, while at the same time accomplishing their dissimilar goals. There is no reason for the legislature to have carved out a separate procedure beyond the auspices of either the juvenile or criminal systems for disposition of the mentally ill child.

Secondly, we must point out that, even if appellant could have properly resorted to § 6356, it would have afforded him no relief. That section requires that there be evidence indicating that a child may be subject to commitment. No evidence was presented at the hearing of September 30, 1980, which would indicate that appellant, although undisputably mentally ill, might have been subject to commitment.

■ A person may be subject to involuntary commitment under the MHPA only upon a showing that he is severely mentally disabled and poses a clear and *present* danger of harm to others or to himself. 50 P.S. §§ 7301, 7304. The requirement that the danger be a *present* one is effectuated by the necessity that the danger to himself or to others be demonstrated *within the past thirty days.* 50 P.S. § 7301(b). Thus, the evidence would have had to have indicated that *within the previous thirty days:* (1) the appellant had inflicted or attempted to inflict serious bodily harm on another and there was a reasonable probability that such conduct would be repeated, 50 P.S. § 7301(b)(1); or (2) the appellant had been unable to care for himself and there was a threat of danger that he would die or seriously harm himself, that he had attempted suicide, or that he had mutilated himself, 50 P.S. § 7301(b)(2).

Under the MHPA, therefore, appellant could only have been involuntarily committed *for Kotchin's murder* within a thirty day period subsequent to the murder. By the time of the hearing on September 30, 1980, almost *four months*

had elapsed from the murder, and so commitment could not have been based on that act. The hearing having revealed no other acts of danger to himself or others which had occurred within the prior thirty days, there was no evidence indicating that appellant might have been subject to commitment at that time. The hearing judge would have been under no compulsion by virtue of § 6356, to proceed under the MHPA.

■ Thirdly, even if § 6356 could be relied upon by appellant outside of the Juvenile Act and he had been committable, the relief he requests would be inappropriate. Appellant argues that appropriate relief would be a reversal of his conviction and a remand for "further proceedings under the MHPA." Understandably, appellant does not outline which proceedings under the MHPA should be followed upon such a reversal—should a court determine whether a defendant is *currently* subject to involuntary commitment? [8] What if the defendant were no longer mentally ill? What if the defendant was still mentally ill but no longer subject to involuntary commitment under the clear and present danger standard? Under these scenarios, appellant would have this court sanction a reversal of a conviction for murder without even the alternative restraint imposed by commitment. The Commonwealth's only recourse at such a juncture would be to repeat the whole process of prosecution.

Carrying appellant's argument one step further, we assume that upon remand a determination of commitment is made. Appellant is confined until his condition no longer evidences a clear and present danger to himself or other, 50 P.S. 7304(a)(2), and is then released. Appellant takes the position that the interests of society are thereupon discharged because the community's safety has effectively been dealt with by appellant's treatment, and no further prosecution could follow.

**8.** It would be absurd to suggest that a court make a determination as to whether or not a defendant had been committable at a point in the past.

562

■ These alleged remedies for failure to proceed under the MHPA are completely at variance with the function of that act. Mental health proceedings were never meant to supplant the operation of the criminal system, but were structured as completely collateral proceedings which could exist contemporaneously with criminal prosecution. *Commonwealth v. Ballem*, 391 Pa. 626, 139 A.2d 534 (1958). *See also, Commonwealth ex rel. McGurrin v. Shovlin*, 435 Pa. 474, 257 A.2d 902 (1969) (dissenting opinion of C.J. Bell). The purpose of mental health proceedings in conjunction with criminal prosecution is merely to "inform the conscience of the court", *Commonwealth v. Ballem, supra* 391 Pa. at 636, 139 A.2d at 538, unless either lack of criminal responsibility or incompetency to proceed is demonstrated. 50 P.S. §§ 7402, 7403. It is only in these two situations that concerns regarding a defendant's mental health interrupt the criminal process. Appellant was neither legally insane nor incompetent to stand trial, and so even if he had been involuntarily committed based on dangerous propensities, his criminal prosecution would have advanced. Appellant's contention that failure to proceed under the MHPA requires a reversal and remand, is therefore, unsound.

Finally, we note that the treatment which appellant seeks for his mental illness is accessible to him through a petition for *voluntary* commitment, which he has pursued. The availability of voluntary treatment is greater since there is no need for strict due process safeguards, and, furthermore, the MHPA explicitly sets forth a preference for mental health treatment on a voluntary basis. 50 P.S. § 7102.

Accordingly, the judgment of sentence is affirmed.