502 A.2d 670

**Mary PISTORIUS, Individually and as Administratrix of the Estate of John J. Pistorius, Deceased, Appellant,**

v.

**The TRAVELERS INSURANCE COMPANY**

v.

**Raymond K. CRAWFORD.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1985.

Filed Dec. 20, 1985.

528

B. Albert Bertocchi, Kittanning, for appellant.

Philip A. Faix, Jr., Pittsburgh, for Travelers, appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, CIRILLO, OLSZEWSKI, BECK and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is whether a "dirt bike", which cannot be licensed under the Pennsylvania Vehicle Code,[1] is a motorcycle for purposes of applying the provision of the Pennsylvania No-fault Motor Vehicle Insurance Act[2] which disallows recovery of no-fault benefits by operators of motorcycles. The trial court held that a dirt bike was a motorcycle and that, although the bike operator had been killed in a collision with a licensed motor vehicle, the administratrix of the deceased operator's estate was ineligible to recover survivor's benefits under the No-fault law. We conclude that the dirt bike was not a motorcycle and reverse.

On August 18, 1981, John J. Pistorius, a thirteen year old youth, was operating a Yamaha MX100 dirt bike along a township road in Sugarcreek Township, Armstrong County, when he came into collision with a truck being driven by Raymond Crawford. Pistorius died as a result of injuries sustained in the collision. Neither the dirt bike nor the truck was covered by insurance. Mary Pistorius, the deceased boy's mother and administratrix of his estate, made a claim for basic loss benefits under the Assigned Claims Plan of the Pennsylvania No-fault Motor Vehicle Insurance Act. The claim was assigned to The Travelers Insurance Company (Travelers). Travelers denied liability. It contended that the decedent had been operating a motorcycle and that, therefore, his administratrix could not recover no-fault benefits under the Act. A civil action followed.

1. 75 Pa.C.S. § 101 et seq.

2. Act of July 19, 1974, P.L. 489, *as amended,* 40 P.S. § 1009.101 et seq., *repealed,* Act of February 12, 1984, P.L. 26, § 8(a) (effective October 1, 1984).

When the trial court entered summary judgment in favor of Travelers, an appeal was filed in this Court.

"Basic loss benefits," as defined by the No-fault Act, are payable to persons who incur loss due to injuries arising out of an accident involving the "maintenance or use of a motor vehicle." No-fault Act, *supra*, § 103, 40 P.S. § 1009.103. However, the Act specifically excludes recovery by victims whose loss has been sustained while operating or riding on a motorcycle. With respect to operators of motorcycles, the Act retains a system of tort liability for injuries which have been sustained. No-fault Act, *supra*, § 301(a)(6), 40 P.S. § 1009.301(a)(6). The Act does not define the term motorcycle. Our task, therefore, is to ascertain whether the legislature intended to bar drivers of dirt bikes from recovering no-fault benefits when it denied benefits to operators of motorcycles.

■ A statute must be read to effect its general purpose. *Busy Beaver Building Centers, Inc. v. Tueche*, 295 Pa.Super. 504, 512, 442 A.2d 252, 256 (1981). Words and phrases used by the legislature are to be construed according to their common meaning and accepted usage, with technical words being given their technical meaning. *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983). However, individual provisions in a comprehensive legislative scheme should not be read abstractly, but rather with a view to their place in the entire structure. *Commonwealth v. Davis*, 330 Pa.Super. 551, 558, 479 A.2d 1041, 1045 (1984), *allocatur granted* (February 7, 1985); *Anatanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 338, 467 A.2d 345, 353 (1983), *aff'd*, 507 Pa. 68, 488 A.2d 571 (1985).

The Supreme Court, in *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975), upheld the validity of the legislature's decision to treat motorcycles differently than other motor vehicles for purposes of providing basic loss benefits to accident victims. The Court did not then define a "motorcycle" for purposes of excluding coverage but did observe that "[m]otorcycles are 'motor vehicles' for the purpose of

compulsory insurance although they are excluded under subsection 301(a)(6) of the Act. No-fault benefits are, therefore, available to third persons injured by a motorcycle." *Id.*, 464 Pa. at 406 n. 29, 346 A.2d at 907 n. 29 (citations omitted).

Travelers argued in the trial court, as it does on appeal, that the Yamaha MX100 dirt bike is virtually identical to a motorcycle. Photographs produced during depositions suggest a similarity. However, the dirt bike has been designed for recreational use and not for use on public highways. It has no headlights, no taillight, no horn, no turn signals, no mirror, and no speedometer. Because it lacks these features, the dirt bike cannot be licensed under the Vehicle Code. Thus, it is not a "motor vehicle" within the meaning of the No-fault Motor Vehicle Insurance Act. See: 40 P.S. § 1009.103.

In *Bindernagel v. Nationwide Mutual Automobile Insurance Co.*, 335 Pa.Super. 419, 484 A.2d 773 (1984), a panel of this Court held that a trail bike was not a motor vehicle. Therefore, it held, a trail bike is not within the ambit of the No-fault Motor Vehicle Insurance Act. With this conclusion we agree. See also: *Siefert v. Nationwide Insurance*, 289 Pa.Super. 160, 432 A.2d 1101 (1981) (trail bike); *Bills v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 188, 463 A.2d 1148 (1983) (dune buggy). Compare: *Gallo v. J.C. Penney Casualty Insurance Co.*, 328 Pa.Super. 267, 476 A.2d 1322 (1984) (snowmobile). Having concluded that a trail bike was not a motor vehicle, the *Bindernagel* court then concluded that there could be no recovery of no-fault benefits. Overlooked by the Court, apparently because it had not been argued, was the fact that Bindernagel's trail bike had come into collision with a motor vehicle. Consequently, the Court found it unnecessary to determine whether the trail bike was a "motorcycle."

In the instant case, however, we cannot avoid determining this issue, i.e., whether a dirt bike is a motorcycle. Even if appellant's decedent was not operating a motor vehicle, it is clear that he was nevertheless a victim of a

motor vehicle accident. While operating a dirt bike, he came into collision with a licensed truck, which was a motor vehicle. As a result of this collision with a motor vehicle, the decedent received injuries which caused his death. If the decedent was operating a motorcycle, his estate is not entitled to recover benefits under the No-fault Act. If his dirt bike was not a motorcycle, however, the statute does not bar a recovery of benefits. In that event the decedent occupies under the No-fault Act a status similar to that of a bicyclist or pedestrian who has been struck by a motor vehicle.

Our examination of the No-fault Motor Vehicle Insurance Act leads us inevitably to the conclusion that to be an operator of a motorcycle, as envisioned by the exclusionary language of the statute, one must be operating a motor vehicle. A recreational vehicle which is not a motor vehicle, therefore, cannot be a motorcycle. The Yamaha MX100 was a recreational vehicle; it was not sold for operation on the public highways. As such, it could be operated lawfully by the decedent even though he was not licensed to operate motor vehicles. Because the dirt bike was not a motor vehicle, the compulsory insurance provisions of the No-fault Act had no application. Thus, if one were injured solely as a result of the maintenance or use of a dirt bike, no-fault benefits would not be payable. If a dirt bike collided with a truck or other motor vehicle, however, its rider would then be entitled to receive no-fault benefits.

We hold that the dirt bike being operated by the decedent at the time it was struck by a truck was neither a motor vehicle nor a motorcycle; it was a recreational vehicle and could not be licensed. Because appellant's decedent was killed as a result of a collision between his dirt bike and a motor vehicle, recovery of basic loss benefits under the Act is permissible. It was error, therefore, to grant summary judgment in favor of Travelers.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

SPAETH, President Judge, joins this opinion and also the concurring opinion by BROSKY, J.

BROSKY, J., files a concurring opinion in which SPAETH, President Judge, joins.

CIRILLO, J., files a dissenting opinion in which OLSZEWSKI and TAMILIA, JJ., join.

BROSKY, Judge, concurring:

I fully agree with the result reached by the majority in this case, and I join the majority's opinion. I believe, however, that some additional comments may be helpful.

The majority seems to imply that it was not necessary for the panel in *Bindernagel v. Nationwide Mutual Automobile Insurance Co.*, 335 Pa.Super. 419, 484 A.2d 773 (1984) to decide whether or not a trail bike was a "motorcycle" within the meaning of the No-fault Act, but that it is necessary for us to decide that issue in the case before us. In both cases, a dirt bike or trail bike (which I believe are synonymous terms) collided with a motor vehicle. In both cases, the trial court ruled that the dirt bike or trail bike was a "motorcycle", and the trial court therefore denied recovery to the injured party riding the bike. In both cases, the injured party (or the injured party's estate) argued on appeal that the trial court erred in finding that a trail or dirt bike was a "motorcycle," the operator of which was to be excluded from No-fault benefits under Section 103 of the Act. The two cases are therefore identical, and our decision in this case should make it perfectly clear that *Bindernagel* is being overruled.[1]

As I view the legislative scheme of the No-fault statute, any individual who is injured through *someone's* (either his own or another person's) use of a "motor vehicle" is entitled to receive basic loss benefits. A pedestrian who is struck

1. It should also be noted, however, that the issue raised sua sponte by the panel in *Bindernagel;* i.e. whether or not a dirt or trail bike is a "motor vehicle," was correctly analyzed by the panel in *Bindernagel.* Pursuant to that analysis, I agree with the majority's conclusion that a trail or dirt bike is not a "motor vehicle," and therefore cannot be a "motorcycle."

by a motor vehicle while crossing the street, even though he may be crossing illegally or otherwise breaking the law, will be entitled to receive the benefits. A person who is riding or driving a non-licensed recreational vehicle or some other motorized vehicle, such as a riding lawn mower, whether on or off the highway, will be entitled to the benefits if involved in an accident with a motor vehicle. The only exception to coverage will be a person who is riding or operating a "motorcycle," because of the specific exclusion of § 1009.103. It is unfortunate that the legislature did not define "motorcycle" in the No-fault Act; however, accepting the definition of "motorcycle" found in the Statutory Construction Act, as the dissent would have us do, would lead to results inconsistent with provisions of the No-fault Act.

Section 103 of the No-fault Act defines "motor vehicle" as "a vehicle of a kind required to be registered under the ... Vehicle Code." As the majority opinion notes [and as panels of our court have noted in *Bindernagel v. Nationwide Mut. Auto. Ins.*, 335 Pa.Super. 419, 484 A.2d 773 (1984), and in *Siefert v. Nationwide Ins.*, 289 Pa.Super. 160, 432 A.2d 1101 (1981)], dirt bikes are not "motor vehicles," since they cannot be licensed. The dissent concedes this point.

A motorcycle clearly falls within the above definition, and is therefore a "motor vehicle." Although not a holding, language of our Supreme Court in *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975) seems to indicate that the Supreme Court would agree with this statement. The dissent in the case before us reaches the same conclusion. Thus, there appears to be complete agreement that under the No-fault Act: (1) a dirt bike is not a "motor vehicle," and (2) a motorcycle is a "motor vehicle."

By applying the definition of "motorcycle" found in the Statutory Construction Act, and by using common sense (which should never be used when attempting to interpret the No-fault Act), the dissent concludes that a dirt bike is a "motorcycle" within the meaning of the No-fault statute.

Accepting the dissent's conclusion that a dirt bike is a "motorcycle," it follows that since a "motorcycle" is a "motor vehicle," a dirt bike must also be a "motor vehicle." This conflicts with our initial conclusion (with which the Dissent agrees) that under the No-fault Act, dirt bikes are not "motor vehicles." I must therefore disagree with the dissent's use of the definition of "motor vehicle" found in the Statutory Construction Act. However much dirt bikes may look like, feel like, and smell like motorcycles, it appears that we are precluded from concluding for purposes of the No-fault statute that dirt bikes are "motorcycles." I therefore agree with the majority that a person operating a dirt bike which is involved in an accident with a "motor vehicle" is entitled to receive basic loss benefits under the No-fault Act.

SPAETH, President Judge, joins this concurring opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent, primarily because I interpret the No-Fault Act as being narrower in scope than does the majority here today.

Dirt bikes [1] are recreational vehicles, not motor vehicles, because they cannot be licensed under the Motor Vehicle Code due to their lack of certain safety features. 40 P.C.S. § 1009.103. Thus, in an ordinary one vehicle accident involving only a dirt bike, the No-Fault Act is inapplicable entirely, and the rider receives no insurance benefits. However, by my Brethren's analysis of 40 P.C.S. § 1009.103, a dirt bike rider *can* receive benefits if he collides with a motor vehicle, because in such instance he has been injured through the "maintenance or use of a motor vehicle."

In contrast, a motorcycle *is* a motor vehicle, so it would initially seem that motorcycle riders would come within the ambit of the No-Fault Act. However, by statutory provision, 40 P.C.S. 1009.301(a)(6), motorcycles are specifically

---

**1.** The term "trail bike" is often used in place of "dirt bike". Any difference between the two is irrelevant to this analysis.

excluded from the Act despite their motor vehicle status. The exclusion is total; even when a motorcyclist is injured by a collision with some other motor vehicle, he is denied basic loss benefits.

The question is obvious: Why not subject dirt bikers to the same sweeping exclusion that faces motorcyclists? The majority reasons that the motorcycle exclusion, like the rest of the No-Fault Act, applies only to motor vehicles; since a dirt bike is not a motor vehicle, the exclusion cannot apply. In my view, this perceived distinction between motorcycles and dirt bikes is irrelevant and contrary to the obvious legislative intent in denying coverage to motorcycles.

It is true that, strictly speaking, a dirt bike is not a motor vehicle because it cannot be licensed under the Motor Vehicle Code. However, in cases such as this, it should not necessarily follow that a dirt bike cannot be a motorcycle. To hinge the allowance of insurance benefits upon whether the bike at issue is licensed under the Vehicle Code ignores an important fact: riders of dirt bikes (and other recreational vehicles) frequently take to the open road in disregard of their machines' lack of those safety features required by the Code.

The No-Fault Act itself lacks a definition of "motorcycle"; we may therefore look to the meaning given the term in the Statutory Construction Act, 1 P.C.S. §§ 1921–1991. *See e.g., Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982). A motorcycle is defined in the Act as "any vehicle of the bicycle or tricycle type operated by any type of internal combustion motor." This broad definition no doubt foresaw many variations on the motorcycle theme, including the dirt bike here at issue.[2] Indeed,

2. Other states have adopted an equally realistic interpretation. *See Life & Casualty Insurance Co. of Tennessee v. King*, 37 Ala.App. 435, 71 So.2d 121 (1953), cert. denied, 260 Ala. 699, 71 So.2d 124 (1954); *Standifer v. Inter-Ocean Insurance Co.*, 37 Ala.App. 393, 69 So.2d 300 (1953); *Navarra v. Central National Insurance Co.*, 232 So.2d 28 (Fla.Dist.Ct.App.1970); *Valdes v. Prudence Mutual Casualty Co.*, 207 So.2d 312 (Fla.Dist.Ct.App.1968); *Labove v. Traders & General Insur-*

in *Myers v. State Farm Mutual Automobile Insurance Co.*, 348 Pa.Super. 539, 502 A.2d 676 (1985), filed even date herewith, we rely upon this very definition in holding that a "moped" can be considered a motorcycle. I fail to see why the definition is not controlling in this case as well.

A commonsense comparison of motorcycles and dirt bikes further supports the conclusion that they are one and the same, particularly when viewed in the light of the legislature's rationale behind the denial of benefits to motorcycle operators. Quite simply, motorcyclists do not reap the benefits of the No-Fault Act because they have chosen a means of transportation considerably more dangerous than the more common automobile; rather than spread this more dramatic risk of loss among all insureds, it is incumbent upon each motorcyclist to recover losses on his own through traditional tort avenues. *Samsel v. The Travelers Indemnity Company*, 295 Pa.Super. 188, 441 A.2d 412 (1982); *Singer v. Sheppard*, 464 Pa. 386, 346 A.2d 897 (1975). In view of the legislature's practical consideration of the dangerous nature of these machines, the majority's cited distinctions between motorcycles and dirt bikes pale in comparison to their one overriding similarity: both require the operator to perch himself atop an engine capable of dramatic acceleration, exposed to the world and stripped of the protection afforded by steel doors and a roof. To the unlucky rider who is hurdled through the air when his bike collides with a less frail object, it makes little difference whether his machine was licensed under the Vehicle Code. Just as a rose by any other name is still a rose, a motorcycle better suited for trails than for highways is nonetheless a motorcycle.

Of course, holding that a dirt bike is but a specific type of motorcycle is the most fluid means of assuring that all such dangerous vehicles are denied No-Fault basic loss benefits. However, even were I to agree with my Brethren that motorcycles and dirt bikes are different in some significant

*ance Co.*, 219 So.2d 614 (La.App.1969); *Labracio v. Northern Insurance Co.*, 66 N.J.Super. 216, 168 A.2d 682 (1961).

way, I cannot agree that a dirt bike rider injured in a collision with a motor vehicle is entitled to benefits under Section 1009.103. The operator of a licensed, roadworthy motorcycle must take it upon himself to recover for any injuries sustained; I fail to see why the rider of a dirt bike, who should not be on the road to begin with, must not be similarly bound. By today's decision, the dirt bike rider who stays on the trails is patently denied coverage (as he should be), but his more daring counterpart can take to the highway secure in the knowledge that a collision with a motor vehicle will trigger the receipt of No-Fault benefits.

The majority feels compelled towards this anamoly by the language in Section 1009.103 which dictates coverage for "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." In my view, this provision must not be contorted to provide a windfall for those who carelessly place recreational vehicles into the flow of traffic. I would apply the provision only to pedestrians and those who are injured by their *own* maintenance or use of a motor vehicle. Under the circumstances, I cannot agree that being struck by a motor vehicle amounts to the maintenance or use of one.

However, I must point out that my position speaks only to those instances in which a dirt bike is involved in an accident on the highway, because it is only then that the dirt bike rider is improperly placed in a more advantageous position than the motorcyclist by today's decision. In other words, I do not here address any "worst case scenario" wherein a motor vehicle somehow goes off the highway and injures a dirt bike rider who is properly keeping his machine off the road. I would have no difficulty placing the injured biker in such instance in the same shoes as an innocent pedestrian, such as to allow the recovery of benefits. *Cf.*, 40 Pa.C.S. § 1009.204(c)(4); *Prudential Property & Casualty Ins. v. Falligan*, 335 Pa.Super. 195, 484 A.2d 88 (1984); *Schimmelbusch v. Royal-Globe Ins. Co.*, 247 Pa.Super. 28, 371 A.2d 1021 (1977).

A practical reading of the No-Fault Act does not allow a dirt bike rider to be put in a more advantageous position than the operator of a properly licensed motorcycle. I would affirm the trial court.

OLSZEWSKI and TAMILIA, JJ., join this dissenting opinion.