502 A.2d 676

**Paul Henry MYERS, an incompetent, by Edna Margaret MYERS, the Guardian of the Estate and Person of Paul Henry Myers, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Danny C. Waters Insurance Agency, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1985.

Filed Dec. 20, 1985.

George H. Rowley, Greenville, for appellees.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, CIRILLO, OLSZEWSKI, BECK and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is whether a motorized pedalcycle, popularly known as a "moped", is a motorcycle for purposes of determining coverage under the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] We hold that a motorized pedalcycle, which must be licensed under the Motor Vehicle Code, is a motorcycle. Therefore, an operator of a moped is not entitled to recover benefits under the No-fault Act.

While operating a 1979 Sachs Moped, a motorized pedalcycle, in the Borough of Greenville, Mercer County, on July 28, 1981, Paul Henry Myers was struck and seriously injured by an automobile. Because of the injuries sustained by Myers, he was rendered incompetent. Consequently, his wife, Edna Margaret Myers, was appointed guardian of his estate. She commenced an action in assumpsit against State Farm Mutual Automobile Insurance Company,[2] which had issued two policies of automobile insurance to the Myers. The first policy had been issued for the moped; it

---

1. Act of July 19, 1974, P.L. 489, as amended, 40 P.S. §§ 1009.101 et seq., repealed, Act of February 12, 1984, P.L. 26, § 8(a) (effective October 1, 1984).

2. Also named as a defendant was the Danny C. Waters Insurance Agency. Appellant concedes that she has no cause of action against this defendant and that preliminary objections in the nature of a demurrer were properly sustained with respect to her claim against the agency.

did not provide coverage for basic loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act. The second policy had been issued to provide coverage for a 1977 Buick owned by Mr. and Mrs. Myers; it did provide for payment of no-fault benefits. The insurance company filed preliminary objections in the nature of a demurrer on grounds that Myers had been injured while riding a motorcycle. The trial court agreed, dismissed the complaint, and entered judgment in favor of the insurer. Mrs. Myers appealed.

In *Pistorius v. Travelers Insurance Co.*, 348 Pa.Super. 527, 502 A.2d 670 (1985), this Court said:

> "Basic loss benefits," as defined by the No-fault Act, are payable to persons who incur loss due to injuries arising out of an accident involving the "maintenance or use of a motor vehicle." No-fault Act, *supra*, § 103, 40 P.S. § 1009.103. However, the Act specifically excludes recovery by victims whose loss has been sustained while operating or riding on a motorcycle. With respect to operators of motorcycles, the Act retains a system of tort liability for injuries which have been sustained. No-fault Act, *supra*, § 301(a)(6), 40 P.S. § 1009.301(a)(6). The Act does not define the term motorcycle.

*Id.*, 348 Pa.Superior Ct. at 530, 502 A.2d at 671. We held in *Pistorius* that to be an operator of a motorcycle, as envisioned by the exclusionary language of the No-fault Act, one had to be operating a motor vehicle. Because the dirt bike in *Pistorius* was a recreational vehicle, neither subject to licensing as a motor vehicle nor intended for use on the public highways, we held that it was not a motor vehicle for purposes of the No-fault Act. Therefore, the dirt bike was not a motorcycle within the motorcycle exclusion of the Act.

Although the vehicle at issue in the instant case was a motorized pedalcycle instead of a dirt bike, we must nevertheless engage in the same inquiry undertaken in *Pistorius* to determine whether this particular transportation device was a motor vehicle for purposes of the No-fault Act, and if so, whether it was a motorcycle subject to exclusion of

no-fault benefits. Because we find that the moped in this case, unlike a dirt bike, *was* a motor vehicle licensed for operation on the public highways of this Commonwealth, the decision in *Pistorius* is not determinative here.

Before attempting to characterize a motorized pedalcycle for purposes of applying the provisions of the No-fault Act, we observe that a statute must be read to effect its general purposes. *Busy Beaver Building Centers, Inc. v. Tueche,* 295 Pa.Super. 504, 512, 442 A.2d 252, 256 (1981). Individual provisions in a comprehensive legislative scheme should not be read abstractly but rather with a view to their place in the entire structure. *Commonwealth v. Davis,* 330 Pa.Super. 551, 558, 479 A.2d 1041, 1045 (1984), *allocatur granted* (February 7, 1985); *Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. 322, 338, 467 A.2d 345, 353 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985).

The No-fault Act, in Section 103, defined "motor vehicle" to mean a vehicle of a kind required to be registered under the Vehicle Code.[3] With certain specific exemptions, all vehicles operated on the public highways must be registered. 75 Pa.C.S. § 1301(a). Although the Vehicle Code, in Section 1302(a)(8), provides that self-propelled, motorized pedalcycles for invalids are exempt from the registration requirements, Myers was not an invalid, and his moped was not in any way designed for operation by an invalid. It was designed for use on public streets and in fact was being so used by Myers when the accident giving rise to this lawsuit occurred. We conclude, therefore, that Myers' moped was required to be licensed. Moreover, it was, in fact, a licensed motor vehicle.

Having decided that the motorized pedalcycle in this case was a motor vehicle, we must now determine whether it was a motorcycle and thus excluded from coverage under the No-fault Act. The Statutory Construction Act, at 1

---

**3.** Although the No-fault Act referred to the Vehicle Code of 1959, the legislature's inadvertent failure to designate correctly the applicable Vehicle Code was not fatal. It constituted a mere oversight. The Vehicle Code of 1976 is applicable. *Siefert v. Nationwide Insurance Co.,* 289 Pa.Super. 160, 161–162 n. 2, 432 A.2d 1101, 1102 n. 2 (1981).

Pa.C.S. § 1991, provides that the term "motorcycle," when used in any statute enacted after September 1, 1937, shall mean, unless the context indicates otherwise, "[a]ny vehicle of the bicycle or tricycle type operated by any type of internal combustion motor." Applying this definition to the facts of the instant case, there can be no doubt that the Myers' moped was a motorcycle.

The same result must obtain if we apply the definition of "motorcycle" used by the legislature in the Vehicle Code. A motorcycle is defined in the Vehicle Code as "[a] motor vehicle having a seat or saddle for the use of a rider and designed to travel on not more than three wheels in contact with the ground." 75 Pa.C.S. § 102. A "motorized pedal-cycle" is defined as "[a] *motor driven cycle* equipped with operable pedals, a motor rated no more than 1.5 brake horsepower, a cylinder capacity not exceeding 50 cubic centimeters, an automatic transmission, and a maximum design speed of no more than 25 m.p.h. *Id.* (emphasis added). A "motor-driven cycle" was defined by the Vehicle Code, at the time of Myers' accident, as "[a] *motorcycle,* including a motor scooter, with a motor which produces not to exceed five brake horsepower, and every pedalcycle with motor attached." *Id.* (emphasis added). The legislature, when it enacted the No-fault law, looked to the Vehicle Code for its definition of a "motor vehicle." A motorized pedalcycle, as we have observed, is a motor vehicle which must be registered. The definition of "motorcycle" adopted by the legislature in the Vehicle Code includes mopeds. Appellant has been unable to demonstrate any valid reason why, in construing the No-fault Act, we should interpret the term "motorcycle" otherwise.

Indeed, although the term "motorcycle" is not defined in the No-fault Act, the general purposes of the legislature and the entire structure of the law as enacted suggest that operators of licensed, motorized pedalcycles were intended to be excluded from the Act's protection. Motorcyclists were excluded because their risk of injury was greater than the risk of injury experienced by operators of other motor

vehicles. A motorcycle's greater instability, the Supreme Court observed, would necessarily increase the premiums needed to purchase insurance protection for such vehicles. *Singer v. Sheppard,* 464 Pa. 387, 406, 346 A.2d 897, 907 (1975). It has also been said that special treatment for motorcycles was prompted by a legislative policy to provide no-fault compensation for highway, vehicular accidents one step at a time. See: *Samsel v. Travelers Indemnity Co.,* 295 Pa.Super. 188, 192, 441 A.2d 412, 414 (1982). The no-fault system provided coverage for lesser accidents but reserved compensation for injuries received in more serious accidents, including those involving motorcycles, for disposition in accordance with traditional tort remedies. *Id.* These concerns are equally applicable to operators of mopeds licensed for use on the public highways.

We hold, therefore, that the moped being operated by Myers when he sustained injury was a motorcycle. It follows that he is not eligible to receive basic loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Law, and that the trial court correctly so held.

Affirmed.