553 A.2d 1014

**George ADAMS, Appellant,**

v.

**HARLEYSVILLE INSURANCE CO. and Southeastern Pennsylvania Transportation Authority, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1988.

Filed Feb. 8, 1989.

Thomas Bruno, II, Philadelphia, for appellant.

Kathleen M. Kramer, Philadelphia, for Harleysville, appellees.

Before CIRILLO, President Judge, and WIEAND and McEWEN, JJ.

McEWEN, Judge:

 This appeal has been taken from the entry of summary judgment[1] in favor of Harleysville Insurance Company (hereinafter appellee), in this action to recover

---

1. The trial court, in three separate orders, (1) denied the motion for summary judgment filed by SEPTA, (2) entered partial summary judgment against SEPTA and in favor of appellant as to liability, with the damages to be determined at trial, and (3) granted Harleysville's motion for summary judgment and entered judgment in favor of Harleysville. This appeal from the order granting summary judgment in favor of Harleysville is properly before us since it terminates the litigation as to Harleysville. *See: Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 45, 489 A.2d 828, 831 (1985). Conversely, the order granting summary judgment on the issue of liability only as to SEPTA is interlocutory. *See: Miller Oral Surgery, Inc. v. Dinello*, 342 Pa.Super. 577, 493 A.2d 741 (1985).

first party benefits pursuant to the Motor Vehicle Financial Responsibility Act.[2]

Appellant, George Adams, was injured while riding as a passenger in a SEPTA trolley which struck the rear of a vehicle insured by appellee. Appellant filed a complaint seeking payment of first party benefits, pursuant to the policy issued by appellee to the driver of the automobile, and in conformity with the requirements of the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §§ 1701 *et seq.* Appellee Harleysville joined SEPTA, alleging that SEPTA was liable for the payment of first party benefits. The trial court granted summary judgment in favor of appellee Harleysville, and dismissed appellee from the action as a result of its conclusions (1) that the SEPTA trolley was a "motor vehicle" for purposes of the Motor Vehicle Financial Responsibility Act, and (2) that SEPTA was, therefore, the obligor required to provide first party benefits to the appellant. 75 Pa.C.S. § 1787(a)(1).

Section 1711 of the Pennsylvania Motor Vehicle Financial Responsibility Act provides that policies covering "any *motor vehicle* of the type required to be registered under [the Motor Vehicle Code]," shall include coverage for first party benefits. 75 Pa.C.S. § 1711 (emphasis supplied). The parties agree that the sole issue presented by this appeal is whether the SEPTA trolley, which was operated upon tracks, is a motor vehicle "of the type required to be registered." We are, therefore, called upon to ascertain whether the legislature intended to exclude from the provisions of the Motor Vehicle Financial Responsibility Act a trolley operated upon tracks.

A statute must be read to effect its general purpose. *Busy Beaver Building Centers, Inc. v. Tueche,* 295 Pa. Super. 504, 512, 442 A.2d 252, 256 (1981). Words and phrases used by the legislature are to be construed according to their common meaning and accepted usage, with technical words being given their technical meaning. *Fireman's Fund Insurance Co. v. Nationwide Mutual*

---

2. 75 Pa.C.S. §§ 1701 *et seq.*

*Insurance Co.*, 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983). However, individual provisions in a comprehensive legislative scheme should not be read abstractly, but rather with a view to their place in the entire structure.... *Anatanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 338, 467 A.2d 345, 353 (1983), *aff'd.*, 507 Pa. 68, 488 A.2d 571 (1985).

*Pistorius v. The Travelers Insurance Company*, 348 Pa. Super. 527, 530, 502 A.2d 670, 671 (1985).

While the term "motor vehicle" is not defined in the Motor Vehicle Financial Responsibility Act, Section 102 of the Motor Vehicle Code defines "motor vehicle" as:

[a] vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated on rails.

75 Pa.C.S. § 102. This same section of the Vehicle Code defines "vehicle" as:

[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks.

75 Pa.C.S. § 102.

This Court, in *Rogers v. SEPTA*, 356 Pa.Super. 432, 514 A.2d 936 (1986), in determining whether a *trackless* trolley was a motor vehicle for purpose of ascertaining the responsible obligor under the now repealed No-fault Act,[3] concluded that a *trackless* trolley was a motor vehicle for purposes of the No-fault Act:

Trackless trolleys need not be registered under the Motor Vehicle Code, 75 Pa.C.S. § 101, not because they are listed as an exception under § 1302(b) of the Code, but because the Department of Transportation has chosen to except them from registration as a policy matter.... Further, trackless trolleys, despite their outward similari-

3. The No-fault Act, just as the Motor Vehicle Financial Responsibility Act, did not include a definition of term "motor vehicle". The Court, therefore, relied upon the applicable provisions of the Motor Vehicle Code.

ties to buses, actually have little in common with true motor vehicles because their travel is limited by their dependence on overhead power lines. °

\* \* \* \* \* \*

The question then, is whether trackless trolleys are more similar to vehicles that are registered under the Vehicle Code (cars, buses, etc.) than to those that are not (dune buggies, trail bikes and the like). We conclude that, despite the fact that trackless trolleys are not actually registered under the Vehicle Code, they are "of a kind" required to be registered. They operate exclusively on public roadways and have all the safety features suiting them for that purpose. While they are not self-propelled, they do have motors, which are simply powered from an outside source. Indeed, apart from the power lines overhead, the trackless trolleys are virtually identical to SEPTA's conventional buses. It is true that they are limited to those roadways that are equipped with power lines, but while they are operating on those roads the trackless trolleys accelerate, stop, and turn just like ordinary buses. We agree with the trial court that trackless trolleys operate on the roadways in such a fashion as to be deemed motor vehicles under the No-fault Act.

*Rogers v. SEPTA, supra,* 356 Pa.Superior Ct. at 434–435, 514 A.2d at 937–938.

Two years after the decision in *Rogers,* the Commonwealth Court was called upon to determine whether a trolley which operates upon tracks was a motor vehicle for the purpose of ascertaining the party responsible for payment of first party benefits under the Motor Vehicle Financial Responsibility Act. *Ellis v. SEPTA,* 116 Pa.Cmwlth. 299, 541 A.2d 843 (1988) (petition for allocatur pending). The Commonwealth Court concluded that a trolley which operates upon tracks is not a motor vehicle for purposes of the Motor Vehicle Financial Responsibility Act:

Harleysville ... maintains that *Rogers* controls because a SEPTA *trackless* trolley—in essence, an electric bus—was deemed to be "more similar to vehicles that are

registered under the Vehicle Code ... than to those that are not." *Rogers, supra* [356 Pa.Super.] at 434, 514 A.2d at 957. Herein, the trolley was a street car. It rode only on rails and was not subject to typical road surface hazards and, thus, its maneuverability was restricted. Moreover, Harleysville fails to cite any authority, and we have not been able to discover any support for the proposition that street cars are required to be registered under the Vehicle Code.

*Ellis v. SEPTA, supra* at 301–303, 541 A.2d at 844.

■ The distinguished Judge Samuel Lehrer reveals in his able opinion the careful analysis that caused him to enter summary judgment for appellee. Both the trackless trolley and the track trolley are restricted in maneuverability to the path of the power lines. Further, trolleys operated upon tracks are more similar to vehicles that are required to be registered under the Vehicle Code than to those not subject to the registration requirements of the Code. *See: Pistorius v. The Travelers Insurance Company,* 348 Pa.Super. 527, 531, 502 A.2d 670, 672 (1985); *Phillips v. Nationwide Insurance Company,* 348 Pa.Super. 351, 353, 502 A.2d 244, 245 (1985); *Bills v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 188, 193, 463 A.2d 1148, 1151 (1983); *Siefert v. Nationwide Insurance Co.,* 289 Pa.Super. 160, 162, 432 A.2d 1101, 1102 (1981). Trolleys, unlike such vehicles as railroad cars, operate in some measure upon the public highways, and, when doing so, are subject to all traffic controls and regulations, and are, as well, plagued by the same hazards and traffic problems as trackless trolleys. Nonetheless, we are constrained to hold that a track trolley is not a motor vehicle for purposes of the Motor Vehicle Financial Responsibility Act.

The Motor Vehicle Code, at Section 102, defines a motor vehicle as "a vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires but not operated on rails." 75 Pa.C.S. § 102. This section appears to state that a "motor vehicle" is (1) every self-propelled

device which is *not* propelled solely by human power, and (2) every device propelled by electric power obtained from overhead trolley wires but *not* operated on rails. Thus, the Vehicle Code excludes a track trolley from the definition of "motor vehicle."

Nor is the decision of the legislature to distinguish between a track trolley and a trackless trolley an anomaly. This Court, in *Rogers v. SEPTA, supra,* addressed the considerable difference between the track trolley and the trackless trolley, noting that "apart from the power lines overhead, the trackless trolleys are virtually identical to SEPTA's conventional buses". The further thought occurs that this issue would not even have arisen had the inventor more aptly labeled the vehicle a "power line bus" instead of a "trackless trolley". A further essential distinction is the vast difference in the range of the two vehicles. The trackless trolley is confined in its course to urban areas and does not venture into the environs. The track trolley, however, is not so restricted, and although the word "trolley" triggers for most Americans the image of city streets,[4] that vision overlooks the sleek, high speed trolleys which speed the commuter and the shopper through the countryside and into the city from its neighboring counties.

Thus, the decision of the legislature to embrace the trackless trolley within its definition of motor vehicle, while

**4.** American literature is replete with reference to trolley cars, bearing witness to the dependency of American cities upon the trolley from the earliest days of the horsedrawn vehicles through to their replacement by electric cars. The trolley is among the purest relics of Americana. There is even a Trolley Museum in East Greenwich, Connecticut. The crucial role of the railroad in the surge of America westward merely mirrored the importance of the trolley car in the development of our big cities into flourishing metropolises. The case might even be made that the dwindling reliance upon the trolley effected the decline of our cities. The advent of the trackless trolley, on the other hand, was but a polite concession to modernity which failed to even interest, let alone capture, the heart of the rider. Moreover, without the trolley, San Francisco would only be another city on a bay, Judy Garland could not have clanged her way past Lewis and Clark to center stage on the shrine of St. Louis, and Pittsburgh would have been without the "streetcar students" whose intrepid scholarly efforts have so enlightened this Commonwealth.

excluding the track trolley, is decidedly reasonable and, in any event, so clear and certain as to render judicial interpretation unnecessary. We are, therefore, constrained to reverse the order which entered summary judgment in favor of Harleysville and remand this matter to the trial court.

Order reversed. Case remanded. Jurisdiction relinquished.