## Walker v. Pennsylvania Financial Responsibility Assigned Claims Plan

*Michael Hanamarian,* for plaintiff.
*Anthony Peska* and *David Walkers,* for defendants.

HALBERT, *J.,* September 29, 1999—The present litigation involves a coverage dispute between the Pennsylvania Financial Responsibility Assigned Claims Plan and the Southeastern Pennsylvania Transportation Authority. The parties have stipulated to the facts, leaving open only the legal determinations.

The plaintiff in this action, Tenisha Walker, filed a lawsuit against the assigned claims plan for injuries incurred

as a result of being struck by an unidentified motor vehicle after exiting a SEPTA trolley. Claiming that SEPTA should be held liable for the injury claim, the assigned claims plan joined SEPTA as a third-party defendant.

It is undisputed that on February 16, 1996, Tenisha Walker was travelling on a SEPTA trolley on her way home from work. Walker exited the trolley at 41st Street, walked to the front of the trolley, and proceeded to cross an intersection in order to transfer to a SEPTA bus awaiting the arrival of passengers. As Walker crossed the street, she was struck by an unidentified motor vehicle which left the scene of the accident.

The parties are in agreement that on the date of the accident, Walker was not a named insured under any insurance policy, did not reside in the household of a named insured under any policy, and was not the spouse of, or a relative of a named insured, under any insurance policy. Walker did not own a vehicle and did not reside with a person who owned an automobile.

The dispute in this case centers upon who bears responsibility for Walker's injuries. It is the assigned claim plan's position that it is absolved of responsibility given Walker's ability to recover directly from SEPTA. The assigned claims plan adopts the viewpoint that Tenisha Walker qualified as an "occupant" of a SEPTA-owned vehicle at the time that she was struck by the unidentified car, rendering SEPTA primarily liable.

The assigned claims plan's argument rests upon the broad definition of "occupant" provided under Pennsylvania law which extends to persons situated outside a vehicle under certain designated circumstances. According to the assigned claims plan, the fact that Walker had exited one SEPTA vehicle and was crossing the street

4

with the intent of boarding a second SEPTA vehicle qualifies her for purposes of recovery.

SEPTA controverts this assertion, contending that it bears no responsibility for Walker's injuries since she did not qualify as an "occupant" of any of its motor vehicles at the time that Walker was injured crossing the street.

Absent responsibility on the part of SEPTA, the assigned claims plan would be liable, given the circumstances involving an unidentified motorist and the lack of other available insurance coverage.

It has been agreed by SEPTA that if this court is to find that Tenisha Walker satisfied the qualifications for coverage on any of its vehicles, it would bear responsibility for $5,000 in personal injury protection and $15,000 in uninsured motorist benefits. This comports with the responsibility that otherwise would be borne by the assigned claims plan.

The issue that has been framed by the parties is whether Walker qualifies for coverage as an "occupant" of any of the SEPTA vehicles in this case. The matter presented is of a legal nature and requires the court to determine Walker's status at the time of the accident.

A person may qualify as an "occupant" of a motor vehicle if injured while walking or standing outside it, provided that there is a sufficient causal relation or connection between the injury and the use of the vehicle.[1] In

---

1. To qualify as an "occupant," there is no necessity that the insured vehicle directly cause the injuries to the claimant. Under the *Contrisciane* test, it is more broadly required that there be a relation or connection between the injury and the use of the insured vehicle. See *Frain v. Keystone Insurance Co.,* 433 Pa. Super. 462, 640 A.2d 1352 (1994).

*Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), the Pennsylvania Supreme Court articulated four requirements under which a person will be deemed to be occupying a motor vehicle:

"(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

"(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, . . .;

"(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

"(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." *Id.* at 336, 473 A.2d at 1009.

There is no assertion of sovereign immunity in this case. SEPTA nevertheless argues that the trolley from which Walker disembarked does not qualify for coverage as either a "vehicle" or "motor vehicle" under the Pennsylvania Financial Responsibility Act. Although SEPTA acknowledges that the bus which Walker was going to board clearly meets these definitions, it takes the position that Walker cannot recover as an "occupant" of either of the two SEPTA modes of transit in this case given the status of the trolley.

The court agrees with SEPTA that the trolley does not meet the definition of "vehicle" or "motor vehicle" under the Pennsylvania Financial Responsibility Act. Based upon the exclusions in the financial responsibility law, both the Pennsylvania Supreme Court, in *Ellis v. SEPTA,* 524 Pa. 398, 573 A.2d 216 (1990) and the Superior Court, in *Adams v. Harleysville Insurance Co.,* 381 Pa. Super. 370, 553 A.2d 1014 (1989), dispositively hold that SEPTA cannot be held responsible for paying first-party

medical benefits for accidents involving trolleys operated on tracks.

The fact that the trolley from which Walker disembarked does not qualify as a "motor vehicle" under the Motor Vehicle Code does not alone preclude Walker from recovering first-party benefits. The circumstances presented in this case are highly unique. Here, Walker was riding a non-qualifying vehicle under the Motor Vehicle Code with the intent to transfer to a qualifying SEPTA bus. The accident occurred in the course of the commuter's course of travel.

Unique to this case is that it was contemplated at least from the time that Walker was riding on the trolley that part of the SEPTA commute would be undertaken on the SEPTA bus, which clearly falls within the purview of the financial responsibility laws. The commute was part of a continuum with an interruption only for a transit connection.

Further unique is that the transit carrier for both the vehicle from which the passenger disembarked and the vehicle to which she was intending to transfer were the same. We believe that given the presentation of these circumstances, SEPTA may be held liable.

Under the *Contrisciane* test, Walker qualifies as an "occupant" of the bus which she was intending to board while making the transfer. In terms of the first criterion, there clearly was a causal connection between the injury and the use of the insured vehicle. Here, Walker was boarding the SEPTA bus in the course of making a connection as part of her commute. It is pertinent that the SEPTA bus was ready to leave and there was no anticipated delay in the commuter connection.

The second criterion is met given Walker's close proximity to both the vehicle from which she disembarked

and the SEPTA bus. The SEPTA bus was across the intersection, within the immediate locale of the site of injury.

As to the third requirement, it is evident that Walker was "vehicle oriented" at the time of the accident. Without interruption or diversion, Walker was making a necessary transfer from one commuter line to another as part of her travels. Given that the SEPTA bus was then ready to leave, there was not even time to undertake other activities which would interrupt the course of travel.

Finally, the act of making the commuter transfer for purposes of completing a planned trip is a transaction deemed essential to the use of a vehicle and thereby meets the last criterion.

It is notable that in contrast with other cases such as *SEPTA v. Dunham,* 668 A.2d 272 (Pa. Commw. 1995), there is absolutely no suggestion that Walker intended to interrupt her travels by purchasing merchandise or undertaking any other diversionary activities which would break the act of travelling.

In many respects, this case is analogous to *Adeyward-I v. Pennsylvania Financial Responsibility Assigned Claims Plan and The Travelers and SEPTA,* 167 Pa. Commw. 450, 648 A.2d 589 (1994), wherein it was determined that a person who was injured while walking across the street after disembarking one SEPTA bus with the intention of boarding a second SEPTA bus qualified as a vehicle occupant for purposes of recovery.

Crucial to the court's determination in *Adeyward-I* was the finding that there was an unbroken causal connection and continuum between the passenger's act of disembarking from the first vehicle and attempting to board the second vehicle. See *Dunham,* 668 A.2d at 274 (discussing rationale underlying the *Adeyward-I* decision).

The present case only differs from *Adeyward-I* to the extent that one of the vehicles was a trolley rather than a bus and that the trolley does not qualify under the Pennsylvania Motor Vehicle Financial Responsibility Act. While this differentiation exists, the court disagrees with SEPTA's contention that SEPTA is thereby absolved of responsibility.

In *Contrisciane,* we are instructed that a liberal interpretation of the term "occupying" is required for purposes of adjudging whether a person who is outside of a vehicle may apply for recovery. 504 Pa. at 335-36, 473 A.2d at 1009. The trial court opinion in *Adeyward-I,* which was adopted verbatim with approval by the Superior Court, took recognition of the fact that a person may be "vehicle oriented" with respect to a vehicle that they are seeking to board.

Given this finding, we believe that it is critical to consider not only the status of the vehicle being exited but to also consider the vehicle being entered as part of the entire sequence of events when determining qualification for benefits under the occupancy criteria.

Credence is lent to the position that a person may be considered an "occupant" of a vehicle that he/she intends to enter given the Superior Court disposition in *Fisher v. Harleysville Insurance Co.,* 423 Pa. Super. 362, 621 A.2d 158 (1993), *alloc. denied,* 536 Pa. 624, 637 A.2d 285 (1993). In that case, a hunter who was unloading a rifle in preparation to enter a truck was struck by another car. Determining that the injured hunter was "truck oriented" because he was making preparation to enter the truck, the Superior Court found that he qualified as an "occupant" of that vehicle. 423 Pa. Super. at 365-66, 621 A.2d at 160.

The nexus between the injuries and act of transit on SEPTA commuter lines is sufficient in this case to expose SEPTA to responsibility for providing first-party benefits with respect to the injuries incurred while making a transfer to a qualifying bus.

Having found that SEPTA must pay first-party benefits, we turn to the issue of uninsured motorist coverage. We believe that the same "occupancy" criteria applies.[2]

The cases involving first-party benefits are grounded upon section 1713 of the Financial Responsibility Act which extends benefits to the *occupants* of an insured vehicle." This language is followed in the priority scheme involving uninsured motorist claims found at 75 Pa.C.S. §1733 in which such benefits may be sought under a "policy covering a motor vehicle *occupied* by the injured person at the time of the accident." The "occupancy" test has been applied to an underinsured motorist coverage claim in *Fisher, supra,* the case involving the hunter standing outside the vehicle.

Application of the "occupancy" test to uninsured benefit coverage warrants the same conclusion reached with respect to first-party benefits. Walker qualifies and is entitled to uninsured coverage from SEPTA for the inju-

---

2. As a self-insured entity, SEPTA is generally required to provide uninsured motorist coverage pursuant to 75 Pa.C.S. §1787. See *Ingalls v. Hertz Corp.,* 453 Pa. Super. 415, 683 A.2d 1252 (1996). There is no requirement, however, that it provide underinsured coverage. *Id.*

Given the broad holdings in *Ellis, supra,* and *Adams, supra,* in which the provisions governing the Motor Vehicle Financial Responsibility Act are deemed altogether inapplicable to trolleys operating on tracks, this court would surmise that SEPTA is absolved from purchasing uninsured motorist coverage on these designated vehicles.

ries sustained after she was struck by the unidentified vehicle while crossing the street.

In making the findings in this case, we forewarn litigants that they are not intended to broadly open the floodgates to litigation for all pedestrians traversing roadways to catch commuter lines. This case is unique since it involves continued travel on a SEPTA line and a person making a transit connection. It must be emphasized that this case involves vehicular transit on a common carrier at both the time preceding and following the accident.

Based upon the above-stated considerations, the court finds in favor of Tenisha Walker and the assigned claims plan against SEPTA in the stipulated sums of $5,000/ $15,000.