422 A.2d 1285 (1980)
UNITED STATES, Appellant,
v.
Ruben A. STANCIL, Appellee.
No. 80-150.
District of Columbia Court of Appeals.
Argued September 9, 1980.
Decided November 3, 1980.
Thomas C. Hill, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Jay B. Stephens, Asst. U. S. Attys., Washington, D. C., were on brief, for appellant.
Randy I. Bellows, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on brief, for appellee.
Before KELLY, NEBEKER and MACK, Associate Judges.
KELLY, Associate Judge:
Appellee Ruben A. Stancil was charged in a four-count indictment with grand larceny (D.C.Code 1973, § 22-2201), receiving stolen property (D.C.Code 1973, § 22-2205), unauthorized use of a vehicle (UUV) (D.C.Code *1286 1977 Supp., § 22-2204), and destruction of property (D.C.Code 1973, § 22-403). The vehicle which was the subject of the unauthorized use charge was a 1979 Tomas Moped.[1] Appellee filed a pretrial motion to dismiss the UUV count, asserting that a moped is not a "motor vehicle" as the term is defined by D.C.Code 1977 Supp., § 22-2204(c).[2] The motion was granted, and the United States appealed, presenting to us an issue of first impression. After considering the language and history of the UUV statute, and the characteristics of the vehicle in question, we hold that a moped is a "motor vehicle" for purposes of D.C.Code 1977 Supp., § 22-2204; consequently, we reverse the trial court ruling and direct reinstatement of count III of the indictment.
In 1913, Congress first enacted the UUV statute for the District of Columbia, making it a crime to operate "an automobile or motor vehicle" without the consent of the owner. 37 Stat. 656 (1913). The legislative history of the statute demonstrates that the section was added to the Code to punish "joyriding." Allen v. United States, D.C. App., 377 A.2d 65, 66, cert. denied, 434 U.S. 1000, 98 S.Ct. 645, 54 L.Ed.2d 497 (1977); H.R.Rep. No. 1393, 62d Cong., 3d Sess. (1913); S.Rep. No. 1085, 62d Cong., 3d Sess. (1913). As originally enacted, the statute contained no definition for the term "motor vehicle."
Although in 1937 Congress adopted a definition of "motor vehicle" for purposes of the District of Columbia Titling and Registration Statute (D.C.Code 1973, § 40-101(a)),[3] it was not until 1976 that the term "motor vehicle" was defined in the Criminal Code of the District of Columbia. In order to deal with a deficiency in the UUV law, Congress in that year amended the statute to facilitate proper prosecution of persons who failed to return rented motor vehicles at the end of the contract period for which they were rented.[4] Act of Oct. 17, 1976, Pub.L. No. 94-526, 90 Stat. 2479. The singular purpose of the revision process which culminated in the 1976 amendment, was to "fill the gap in existing law in the District of Columbia . . . so as to permit more effective prosecution for unlawful use of rented vehicles." 112 Cong.Rec. 10548 (daily ed. April 12, 1976) (remarks of Rep. Diggs).
Appellee urges this court to hold that while voting to expand the coverage of the *1287 UUV statute to facilitate prosecution for failure to return rental vehicles, Congress at the same time intended to narrow the definition of "motor vehicles" to which the Act applies. Nothing in the legislative history of Pub.L. No. 94-526, supra, however, persuades us that Congress had that intention.
Appellee points out that during hearings on H.R. 341, 93rd Cong., 1st Sess., a bill to amend the UUV statute proposed in the 93rd Congress but never enacted into law, the office of the Corporation Counsel proposed a definitional section containing the words "motorcycle" and "motorbike." We are asked to infer, from its failure to include both "motorcycle" and "motorbike" in the statute finally enacted three years later, that the Congress affirmatively intended to narrow the coverage of the UUV statute. Although we cannot ignore the legislative history referred to by the appellee, we do not find the inference convincing.[5] Rather, we hold that the better interpretation is that Congress presumed the word "motorcycle," as used in the statute, would continue to mean what it does in everyday speech; a motor-powered vehicle having two (and in some cases three) wheels. Our decision is in accordance with the fundamental canon of statutory construction that unless otherwise defined words will be interpreted as taking their ordinary, contemporary, common meaning. Perrin v. United States, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).
The trial court's ruling is based on the premise that a moped, or motorbike, is of such a unique and distinct character when compared with other vehicles commonly known as motorcycles that, for purposes of the UUV statute, it cannot be presumed Congress intended that mopeds be included within the term "motorcycle." Our examination of the characteristics of mopeds, and the nature of their use, convinces us that, within the context of a statute punishing those who make unauthorized use of the vehicle, as opposed to a statutory scheme concerning titling and registration,[6] there is not sufficient difference between a moped and other vehicles known as motorcycles, to warrant disparate treatment for offenders, and diminished legal protection for the legitimate owners of the vehicles.
The primary feature which distinguishes a moped from other two-wheeled, motor-driven vehicles is that the moped is equipped with operable pedals, and can therefore be propelled forward without the use of its motor. Nonetheless, "a moped, because of its weight (60-120 lbs.), [will] be used primarily as a motor vehicle and not as a bicycle." Transportation and Environmental Affairs Committee Report No. One on Bill No. 1-255 (Council of the District of Columbia) (July 23, 1976) at 27. Mopeds are generally smaller and of lighter construction than most other motorcycles not equipped with pedals, mopeds do not ordinarily travel at speeds over 40 miles per hour, and mopeds have a lower rate of fuel consumption than other motorcycles. We conclude these special characteristics of the moped demonstrate that it is merely a subspecies of that category of motor vehicles generally known as motorcycles.
Courts in both New York and California have reached the same conclusion when *1288 faced with this issue in slightly different contexts. People v. Jordan, 75 Cal.App.3d Supp. 1, 142 Cal.Rptr. 401 (1977) (moped considered motor vehicle in prosecution for drunk driving); People v. Devlin, 64 Misc.2d 327, 314 N.Y.S.2d 670 (1970) (two-wheeled vehicle with seat and motor, known as "minibike," is vehicle to which vehicle and traffic law is applicable); LaLomia v. Bankers and Shippers Insurance Co., 35 App.Div.2d 114, 312 N.Y.S.2d 1018 (1970), aff'd, 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (1972) (motorized bicycle involved in collision was "motor vehicle" within meaning of uninsured motorist law).
We reach our decision mindful of the rule that penal statutes are to be strictly construed. Dobbs v. Neverson, D.C.App., 393 A.2d 147, 154 (1978). We are nevertheless convinced that Congress intended that the term "motorcycle" would be understood to mean any two-wheeled vehicle propelled by an internal combustion engine. Our disposition is in accord with the rule in McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931), that "vehicle" in the phrase "any other self-propelled vehicle not designed for running on rails," could not be interpreted as including aircraft, and therefore, the government could not prosecute the petitioner for theft of an aircraft under the "National Motor Vehicle Theft Act," 41 Stat. 324 (1919). In Justice Holmes' words, "in everyday speech `vehicle' calls up the picture of a thing moving on land . . . the phrase under discussion calls up the proper picture." McBoyle v. United States, supra at 26, 51 S.Ct. at 340. As used in "everyday speech," the word motorcycle "calls up a popular picture" which encompasses the moped which appellee was charged with unlawfully appropriating. When the legislature determines that a distinction is to be made among classes of motorcycles, as has been done for purposes of traffic and safety regulations, titling and registration,[7] the legislature will expressly make such a distinction.
Accordingly, we reverse the ruling on appeal and remand with directions to reinstate count III of the indictment.
So ordered.
NOTES
[1] A moped is a two-wheeled vehicle equipped with both operable pedals and a small motor. It has for many years been ubiquitous in Europe and has become increasingly popular in the United States during the last decade because of its economical purchase price, easy maneuverability and low fuel consumption.
[2] The relevant sections of the UUV statute read as follows:

(a) Any person who, without the consent of the owner, shall take, use, operate, or remove or cause to be taken, used, operated, or removed, from a garage, stable, or other building, or from any place or locality on a public or private highway, park, parkway, street, lot, field, enclosure, or space, a motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use, or purpose shall be punished by a fine not exceeding $1,000 or imprisoned not exceeding five years, or both such fine and imprisonment.
* * * * * *
(c) For the purposes of this section the terms "motor vehicle" and "vehicle" mean any automobile, self-propelled mobile home, motorcycle, truck, truck tractor, truck tractor with semi or full trailer, or bus.
[3] In 1972, the City Council adopted, as part of its Highway and Traffic Licensing and Registration Regulations, definitions for "motorcycle," "motor bicycle" and "motor vehicle." 32 DCRR § 1.301 (1972). These definitions were amended in 1977 by the "District of Columbia Motorized Bicycle Act." D.C. Law 1-110.
[4] Before the amendment, under guidelines worked out between the rental industry and the United States Attorney, a rental agency was required to attempt to locate the vehicle for 72 hours, then make a written notice of demand to the renter and, after 10 days, present a written report to the Metropolitan Police Department, and await a warrant request approval from the United States Attorney. This procedure required approximately 13 days. In that time, the District of Columbia rental industry had suffered significant losses. See To Prohibit the Unlawful Use of Motor Vehicle: Hearing before the Judiciary Subcommittee of the House Committee on the District of Columbia on H.R. 341, 93rd Cong., 1st Sess. (1973). This was the focus of attention of the Congress when it enacted D.C.Code 1977 Supp., § 22-2204(c).
[5] Appellee suggests several reasons why Congress might have intended to exclude motorbikes from the UUV statute centering on the mechanical differences between mopeds and most other motorcycles. We consider the more likely reason "motorbike" was not included in the statute was that it would be redundant. See Webster's New Word Dictionary (2d College ed. 1977) ("motorbike" defined as "light motorcycle").
[6] There is little significance, for purposes of this case, in the fact that the District of Columbia Government adopted regulations in 1972 which distinguished between "motorcycles" and "motorbikes" in titling and registration. 32 DCRR § 1.301. In the context of statutes concerning the licensing and registration of motor vehicles and their operators, it is logical to make distinctions among all types of motor vehicles based upon weight, size, market value and the skills required for safe operation. On the other hand, there is no obvious logic in applying the same distinctions in a statute directed towards punishing those who unlawfully appropriate motor vehicles.
[7] The "District of Columbia Motorized Bicycle Act," supra, to which appellee points in order to show a difference between mopeds and other motorcycles was designed to encourage the use of mopeds. Although the UUV statute predates the "Motorized Bicycle Act," we note that affording protection to moped owners against unauthorized use is consistent with the goals of the Act.