**Richmond**
TERRY ALLEN DIGGS
v.
COMMONWEALTH OF VIRGINIA
No. 0254-86-4
Decided May 17, 1988

COUNSEL

Ron Lewis Napier (Napier & Napier, on brief), for appellant.

Eugene Murphy, Assistant Attorney General, (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

## ON REHEARING EN BANC

**BARROW, J.**—In this appeal of a traffic infraction we conclude that a person whose operator's license has been suspended or revoked may not drive a moped[1] on a public highway.

Diggs was convicted of operating a moped on a public highway after his operator's license had been revoked. When he was observed, his moped was being propelled by its motor, although foot-pedalling was required to initiate its motion.

Code § 46.1-350(a) prohibits driving "any motor vehicle or any self-propelled machinery or equipment on any highway" during a period of suspension or revocation of an operator's license.[2] Since a moped is expressly excluded from the definition of a motor vehicle, Code § 46.1-1(15), its operation is prohibited by Code § 46.1-350 only if it is "self-propelled machinery or equipment."

The words, "self-propelled machinery," are not ambiguous. Words are ambiguous if they admit to "being understood in more

---

[1] A moped is a "bicycle-like device with pedals and a helper motor . . . rated at no more than two brake horsepower and which produces speeds up to a maximum of thirty miles per hour." Code § 46.1-1(14b).

[2] Section 46.1-350(a) of the Code of Virginia reads in part that:

[N]o person, resident or nonresident, whose driver's license or instruction permit or privilege to drive a motor vehicle has been suspended or revoked . . . shall thereafter drive any motor vehicle or any self-propelled machinery or equipment on any highway in this Commonwealth . . . .

than one way" or refer to "two or more things simultaneously." *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). They may also be ambiguous if they are "difficult to comprehend," "of doubtful import," or lack "clearness and definiteness." *Id.* The term, "self-propelled machinery" is none of these.

The meaning of "self-propelled machinery," is clear and has only one meaning. "Self-propelled" is an adjective meaning "[c]ontaining its own means of propulsion . . . ." *American Heritage Dictionary* 1113 (2d College ed. 1982). Machinery refers to "[m]achines or machine parts collectively," while a machine is "[a] system, usually of rigid bodies, formed and connected to alter, transmit, and direct applied forces in a predetermined manner to accomplish a specific objective . . . ." *Id.* at 751.

According to these definitions, a moped is a "self-propelled" machine. Like a bicycle, it is a system of rigid bodies or parts formed and connected to direct energy in a predetermined manner to accomplish locomotion. Unlike a bicycle, it is equipped with a helper motor and, therefore, contains its own means of propulsion.

■ Since the words of the statute are clear and unambiguous, judicial construction is not required. *Brown*, 229 Va. at 321, 330 S.E.2d at 87. The general rules of statutory construction do not apply, and we may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear. *Id.* We must "take the words as written" and give them their plain meaning. *Id.*

The appellant argues that the words, "self-propelled machinery or equipment" are ambiguous because they are too inclusive. But, broadly inclusive language in a statute is not ambiguous if the legislature's objective requires such language. *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980).

■ Even if we were to accept Digg's argument that the term is ambiguous, the legislative history supports our conclusion that a moped is "self-propelled machinery or equipment" for purposes of Code § 46.1-350(a). The General Assembly's broad objective in using the language "self-propelled machinery or equipment" is apparent from the statute's history. Immediately preceding the adoption of Code § 46.2-350(a) the Virginia Advisory Legislative

Counsel recommended to the General Assembly that anyone whose operator's license is suspended or revoked be prohibited from operating "any self-propelled *farm* machinery or *construction* equipment." *See Report of the Virginia Advisory Legislative Counsel, Safety of Virginia Highways*, S. Doc. No. 8, at 7 (1963) (emphasis added). The General Assembly responded by amending Code § 46.1-350(a) to include "any self-propelled machinery or equipment" without the limitations of the modifying words "farm" or "construction." This action demonstrated the legislature's intent that the words "machinery" and "equipment" have their plain, even though broad, meaning.

This broad objective of the language in Code § 46.1-350(a) was not diminished by later legislative amendments to other parts of the motor vehicle laws. The exclusion of bicycles and mopeds from the definition of "motor vehicle" eliminated the requirements of registration and operators' licenses for mopeds but did not alter their status as self-propelled machinery or equipment under Code § 46.1-350(a). *See* Code § 46.1-1(15). The increased use of mopeds has required the General Assembly to amend various parts of the motor vehicle code to either include or exclude mopeds from the application of those provisions. *See, e.g.,* Code §§ 46.1-17, 46.1-171.1, 46.1-215.1, 46.1-229.1, 46.1-263. However, because the language "self-propelled machinery or equipment" was already sufficiently broad to accomplish the legislature's objectives in Code § 46.1-350, it was not necessary to broaden its reach any further. Mopeds were included within its reach without the necessity of amendment.

Diggs contends that another provision of the motor vehicle code, Code § 46.1-171.1, demonstrates a legislative intent to treat a moped as something other than self-propelled machinery or equipment. Code § 46.1-171.1 authorizes the State Highway and Transportation Board to prohibit the use of interstate highways "by any or all . . . (1) Pedestrians, (2) persons riding bicycles or mopeds, (3) horse-drawn vehicles, (4) self-propelled machinery or equipment, and (5) animals led, ridden or driven on the hoof." Diggs suggests that by listing "self-propelled machinery or equipment" separately from "persons riding bicycles or mopeds" the legislature intended to treat these categories as separate and distinguishable for purposes of Title 46.1. Therefore, he reasons that, since mopeds are listed separately from "self-propelled machinery

or equipment" in Code § 46.1-171.1, the category of "any self-propelled machinery or equipment" contained in Code § 46.1-350 does not include mopeds.

Since the language of Code § 46.1-350 is clear and unambiguous, we cannot use judicial construction to give it new meaning; however, if we were to look beyond the meaning of the language, we would not agree with Diggs' analysis. The categories contained in Code § 46.1-171.1 are not mutually exclusive. A highway use described by one category may also be described by another. A "horse-drawn" vehicle may also be an animal "led, ridden or driven on the hoof." Similarly, a "moped" may also be "self-propelled machinery or equipment."

Other provisions of the motor vehicle code do not define "machinery" or "equipment" nor do they limit the definition of these terms in a way that would exclude mopeds. Diggs points to other provisions where these terms are used and contends that the manner of their use excludes mopeds.[3] However, in each instance of their use the terms simply enumerate certain tangible personalty without attempting, either explicitly or implicitly, to define "machinery" or "equipment" or limit what may be included within their scope.

In addition, Virginia Attorney General opinions have consistently held, without contrary legislative response, that one whose license is suspended or revoked cannot legally operate a moped on public highways during the period of suspension or revocation. *See Op. Va. Att'y Gen.* 215-16 (Oct. 26, 1984); *Op. Va. Att'y Gen.* 265-67 (July 20, 1977); *Op. Va. Att'y Gen.* 251-52 (Oct. 2, 1975). Although the Attorney General's opinions are not binding, *Barber v. City of Danville*, 149 Va. 418, 424, 141 S.E.

---

[3] *See, e.g.,* Code § 46.1-47 ("[f]arm tractors, road rollers and road machinery used for highway purposes"); Code § 46.1-156 ("well-drilling machinery"); Code § 46.1-164 (equating "motor vehicles, trailers or semi-trailers" with "machinery"); Code § 46.1-315 ("well-drilling machinery"); Code 46.1-43 ("heavy construction equipment" and "other heavy equipment"); Code § 46.1-46 ("equating" equipment with "fire-fighting trucks, trailers and semitrailers," "fire-fighting apparatus," "vehicles" and "ambulances"); Code §§ 46.1-115(c) and 46.1-115.1 ("special permanent mounted equipment"); Code § 46.1-156(B) (defining "[s]pecialized mobile equipment" as "self-propelled motor vehicle manufactured for a specific purpose"); and Code § 46.1-343.4 (equating "equipment" with "empty, oversize and overweight, rubber-tired, self-propelled haulers and loaders used in the construction and coal mining industries").

126, 127 (1928), they are persuasive, *id.*, and may be used as an "aid in construing legislative intent." *Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 621, 299 S.E.2d 346, 348 (1983).

We conclude that, since the defendant was operating a moped being propelled by its motor, he was operating "self-propelled machinery or equipment" in violation of Code § 46.1-350; thus, we affirm his convictions.

*Affirmed.*

Baker, J., Coleman, J., Duff, J., Keenan, J., and Moon, J., concurred.

Cole, J., with whom Koontz, C.J. and Benton, J., join, dissenting.

I respectfully dissent and disagree with the majority opinion.

The issue presented in this case is whether the appellant, Terry Allen Diggs, violated Code § 46.1-350(a) when he operated a moped on a highway while his operator's license was suspended or revoked. This section provides that no person whose operator's license has been suspended or revoked "shall therafter drive *any motor vehicle or any self-propelled machinery or equipment* on any highway in this Commonwealth." (emphasis added). We, therefore, must determine whether a moped is a "motor vehicle" or any self-propelled machinery or equipment" to bring Diggs under the provisions of the statute.

We must first know what a moped is. By statutory definition a moped is a "bicycle-like device with pedals and a helper motor which is rated at no more than two brake horsepower and which produces speeds up to a maximum of thirty miles per hour." Code § 46.1-1(14b). If a vehicle has more power or speed than provided in the statute, it is not a moped. If we use the generally accepted definition of a motor vehicle to ascertain its meaning, a moped is a motor vehicle under Code § 46.1-350(a). What is obvious, however, turns into obscurity when we read the definitional section of the Motor Vehicle Code. Code § 46.1-1(15) states: "[A]ny device herein defined as a bicycle or a moped shall be deemed not to be a motor vehicle." Therefore, since a moped is not a motor vehicle, it is encompassed within the prohibition of Code § 46.1-350(a) only

if it is deemed "self-propelled machinery or equipment," a term not defined in the Motor Vehicle Code. We must determine whether Code § 46.1-350(a) is clear and unambiguous. If so, the plain meaning must be accepted without resort to extrinsic evidence and rules of construction.

"It is a settled rule of construction in this state that where a statute is plain and unambiguous there is no room for construction by the court and the plain meaning and intent of the statute will be given it." *McClung v. Henrico County*, 200 Va. 870, 874, 108 S.E.2d 513, 516 (1959); *see Winston v. City of Richmond*, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954); *Almond v. Gilmer*, 188 Va. 1, 14-15, 49 S.E.2d 431, 439 (1948).

Language is ambiguous if it admits to being understood in more than one way or refers to two or more things simultaneously. An ambiguity exists when the language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness. . . .[W]hen an enactment is unambiguous, extrinsic legislative history may not be used to create an ambiguity, and then remove it, where none otherwise exists.

*Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citations omitted).

Applying these rules to the facts of this case, we find the language of Code § 46.1-350(a), "any motor vehicle or any self-propelled machinery or equipment," to be ambiguous. Admittedly, the terms "machinery or equipment" are all inclusive and one can hardly think of any device not included. As already stated, Code § 46.1-1(15) defines "Motor Vehicle" and exempts from it, by definition, a bicycle or a moped. *Webster's Third New International Dictionary* (1986) defines "machinery" as (1) "machines as a functionary unit:" such as "the constituent parts of a machine or instrument; equipment, stock, or range of machines"; (2) "the means and appliances by which something is kept in action or a desired result is obtained." A synonym for "machinery" is "equipment." *Webster's* gives many and varied definitions for "machine." The most logical in the context of this case is: "engine, apparatus, appliance, signify[ing], in common, a device, often complex, *for doing work* beyond human physical or mental limitations or faster than the human hand or mind." (emphasis

added). Machine applies to a construction or organization whose parts are so connected and interrelated that it can be set in motion and perform work as a unit.

*Webster's* defines "equipment," among other things, as (1) "the implements (as machinery or tools) used in an operation or activity;" (2) "all the fixed assets other than land and buildings of a business enterprise;" (3) "apparatus, machinery, paraphernalia, outfit, tackle, gear, material . . . in common, all the things used in a given work or useful in effecting as given end." The Commonwealth argues from these definitions that a moped is "machinery" or "equipment."

I think it unreasonable to conclude that the legislature would pass Code § 46.1-1(14b) in 1981, providing that a moped is not a motor vehicle, intending at the same time to include the device as "machinery or equipment." If the legislature had intended this contradictory result, it presumably would not have excluded "moped" from the definition of a motor vehicle. The words "machinery" and "equipment" are so broad that it is difficult to garner from them the meaning and intent of the legislation. Certainly, the precise meaning of these words is difficult to comprehend in the context of this statute. I differ with the view of the majority that the meaning of "self-propelled machinery" is clear and unambiguous. They conclude that judicial construction is not required and that they need not resort to legislative history and extrinsic facts to interpret words whose meaning is clear. I conclude that the language is ambiguous, permitting us to seek legislative history to determine the true meaning and intent of the statute.

Since I find that the statute is ambiguous, I must resort to the history of the statute and the rules of construction to determine legislative intent, which is the primary concern of statutory construction. *Virginia Dep't of Labor & Industry v. Westmoreland Coal Co.,* 233 Va. 97, 101-02, 353 S.E.2d 758, 762 (1987). "The divergent interpretations discussed above demonstrate the difficulty one encounters in trying to ascertain the statute's meaning." *Id.* at 101, 353 S.E.2d at 762.

The history of the Motor Vehicle Code is informative in determining legislative intent. Section 2154(39)a(b) of the 1930 Code of Virginia defined the term "motor vehicle" as "every vehicle, as

herein defined, which is self-propelled." The term "vehicle" was defined in subsection (a) as:

Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks.

Code § 2154(39)a(a) (1930). The 1930 Code does not define the terms bicycle or moped. Notably, as far back as 1930, motor vehicles have been defined as *self-propelled*, and *devices* moved by human power have been exempted from the definition of "motor vehicles."

In 1958, title 46 was repealed and the Motor Vehicle Code was reenacted as title 46.1. Former Code § 46-347.1 of the 1952 Code was reenacted as Code § 46.1-350 of the 1958 Code. In 1963, the Virginia Advisory Legislative Council compiled a report entitled "Safety on Virginia Highways" which was presented to the Governor and the General Assembly of Virginia. *See Report of the Virginia Advisory Legislative Council, Safety of Virginia Highways*, S. Doc. No. 8 (1963). This report contains numerous recommendations, two of which are pertinent to our inquiry in the instant case.

First, the Council recommended that legislation should be adopted making it "unlawful for any person whose operator's license is under suspension or revocation to operate any self-propelled *farm* machinery or *construction* equipment" on Virginia highways. S. Doc. No. 8, at 7 (emphasis added). The reason given for this recommendation was that the privilege to operate such machinery and equipment was abused by those whose licenses had been revoked, and the use of such machinery or equipment in lieu of motor vehicles added "an unnecessary hazard to our overcrowded highways." *Id*, at 16.

In response to the Council's report, the General Assembly, in its 1964 session, amended Code § 46.1-350(a) to read, in pertinent part, as follows: "No person . . . whose operator's or chauffeur's license . . . has been suspended or revoked . . . shall thereafter drive any motor vehicle *or any self-propelled machinery or equipment* on any highway in this State." Code § 46.1-350(a) (1967

Repl. Vol.). The amendment incorporated the language recommended by the Council except that "farm" was omitted before "machinery" and "construction" was omitted before "equipment."

Secondly, the Council recommended that "the State Department of Highways be given authority to prohibit the use of controlled access highways by pedestrians, bicycles, horse-drawn vehicles, self-propelled *farm or construction* machinery or equipment, and animals led, ridden or driven on the hoof." *Id.* at 7 (emphasis added). This recommendation resulted in the enactment of Code § 46.1-171.1, in 1964, which provided, in pertinent part:

> The State Highway Commission may, when necessary to promote safety, prohibit the use of interstate highways . . . and other controlled access highways or any part thereof by any of the following: (1) Pedestrians, (2) persons riding bicycles, (3) horse-drawn vehicles, (4) *self-propelled machinery or equipment*, and (5) animals led, ridden or driven on the hoof."

Code § 46.1-171.1 (Repl. Vol). Again, the Council's recommendation was adopted verbatim except that the words "farm or construction" were deleted.

The omission of "farm" and "construction" in the statutes suggests that the General Assembly recognized that machinery and equipment were operated upon the highways for uses other than "farm" and "construction" purposes. I think that the report of the Virginia Advisory Legislative Council clearly indicates that the legislature did not have in mind every conceivable mechanical contrivance that man can imagine, but rather those types of self-propelled machinery and equipment usually designed for and associated with agricultural and construction work. The absence of any reference to a moped indicates that the General Assembly did not consider it "self-propelled machinery or equipment." Even if in existence at the time, they clearly would have been included in the term "motor vehicle." The primary purpose of machines and equipment is to generate energy with which to perform work. A moped has no connection with work. I find nothing in the legislative history of the statutes which indicates that mopeds are ordinarily considered instruments to accomplish work, as is the case with machines and equipment.

In 1981 the General Assembly made several significant changes in Code § 46.1-1 concerning definitions which involved mopeds, and they must be read together to determine their intent and meaning. For the first time a moped was defined in the Motor Vehicle Code:

A bicycle-like device with pedals and a helper motor which is rated at no more than two brake horsepower and which produces speeds at up to a maximum of thirty miles per hour.... For purposes of Chapter 4 (§ 46.1-168 *et seq.*) of this title, a moped shall be a vehicle while operated upon a highway.

Code §46.1-1(14b).

Chapter Four of the Motor Vehicle Code is entitled Regulation of Traffic. This chapter encompasses Code § 46.1-171, which specifically provides that "[e]very person riding a bicycle or moped or an animal upon a highway . . . shall have all of the rights and . . . duties applicable to the driver of a vehicle." Since section 14(b) of Code § 46.1-1 states that for purposes of chapter 4 a moped shall be treated as a vehicle while operated upon a highway, this by implication denotes that it is not a vehicle for purposes of other chapters in the Motor Vehicle Code. In subsection (14) the definition of "motorcycle" was amended to except from the motorcycle class any vehicle included within the term "moped." The term "motor vehicle" was amended to provide that a moped is not deemed a motor vehicle. The impact of these amendments clearly shows that the General Assembly intended to place a moped in a classification of its own and did not consider it to be "machinery or equipment." If it had intended such a result, it would have added the term moped to the devices specified in Code § 46.1-350(a).

Also in the 1981 session, the General Assembly amended Code § 46.1-171.1 to read as follows:

The State Highway and Transportation Commission may . . . prohibit the use of interstate highways . . . by any or all of the following: (1) Pedestrians, (2) persons riding bicycles *or mopeds*, (3) horse-drawn vehicles, (4) self-propelled machinery or equipment, and (5) animals led, ridden or driven on the hoof.

(emphasis added). This amendment further demonstrates that the legislature equated bicycles and mopeds and did not intend "self-propelled machinery or equipment" to encompass mopeds. Otherwise, the language "or mopeds" would be surplusage, and "we will assume that [the legislature's] amendments to the law are purposeful and not unnecessary or vain." *Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 600, 331 S.E.2d 476, 479 (1985).

The legislative intent to equate mopeds with bicycles and not "self-propelled machinery or equipment" is reinforced by comparing various definitions throughout Title 46.1. First, a "motor vehicle" is defined as "self-propelled" in Code § 46.1-1(15) while the term "self-propelled" does not appear in the definition of "moped" in Code § 46.1-1(14b). This suggests that the legislature did not consider a moped to be "self-propelled" in the context of Title 46.1. The terms "Self-propelled" and "machinery" are used in Code § 46.1-1(7) to define "farm tractor" and the term "machinery" is also used in Code § 46.1-352 to describe certain farm and construction vehicles, yet none of these terms was used to define "mopeds." Had the legislature considered a moped to be self-propelled machinery or equipment, it presumably would have used those terms in describing a moped as it did in describing other vehicles.

Finally, I am cognizant of three opinions of the Attorney General stating that a moped is "self-propelled machinery or equipment," and that it is, therefore, covered by Code § 46.1-350(a). *See Op. Va. Att'y Gen.* 215-16 (Oct. 26, 1984); *Op. Va. Att'y Gen.* 265-67 (July 20, 1977); *Op. Va. Att'y Gen.* 251-52 (Oct. 2, 1975). Although these opinions are entitled to due consideration, they are not binding. *Albemarle County v. Marshall*, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975); *Barber v. City of Danville*, 149 Va. 418, 424, 141 S.E. 126, 127 (1928). I am unwilling to conclude that the legislature has, by its inaction, approved the Attorney General's interpretation of Code § 46.1-350(a) because this interpretation is not consistent with the apparent intent of the legislature as disclosed in the foregoing legislative history.

The Commonwealth acknowledges that no Virginia case discusses this issue, and from other jurisdictions cites *State v. Senko*, 457 A.2d 824 (Me. 1983); *Royal-Globe Insurance Co. v. Schultz*, 385 Mass. 1013, 434 N.E.2d 213 (1982); *Lalomia v. Bankers &*

*Shippers Insurance Co.*, 312 N.Y.S.2d 1018 (1970), *aff'd*, 291 N.E.2d 724 (1972); *Myers v. State Farm Mutual Auto Insurance Co.*, 502 A.2d 676 (Pa. Super. Ct. 1985); *People v. Jordan*, 75 Cal. App. 3d 1, 142 Cal. Rptr. 401 (1977); *United States v. Stancil*, 422 A.2d 1285 (D.C. App. 1980), in support of its position. All of these cases are readily distinguishable from the pending case.

*Senko* was based upon a statutory provision in Maine which defined a "motor vehicle" as "any self-propelled vehicle not operated exclusively on tracks." 457 A.2d at 825. *Royal-Globe Insurance* was decided upon an insurance policy which defined "auto" as "a land motor vehicle." The defendant admitted that a moped moved over land and had a motor. The court concluded that a moped was a "land motor vehicle." 385 Mass. at 1013, 434 N.E.2d at 213-14. In *Lalomia*, a motorized bicycle was held to be a motor vehicle within the meaning of an uninsured motorist endorsement contained in an insurance policy. 312 N.Y.S.2d at 1024. In *Myers*, a moped was determined to be a motor vehicle because it "was required to be licensed" under that state's law. 502 A.2d at 677-78. In *Jordan*, a moped was considered a motor vehicle in a drunk driving case, 75 Cal. App. 3d at 7, 142 Cal. Rptr. at 405; and in *Stancil* a moped was considered a "motor vehicle" for purposes of a statute governing unauthorized use of a vehicle. 422 A.2d at 287-88. However, these cases are unlike the pending case because the Commonwealth admits that, by statutory definition, a moped is not a motor vehicle in Virginia.

The most analogous opinion from another state is *Velez v. Criterion Insurance Co.*, 461 So. 2d 1348 (Fla. 1984), where the issue before the court was whether a moped was a self-propelled vehicle. The Florida Supreme Court held that for purposes of the Florida Automobile Reparations Reform Act, the statue in question unambiguously defined a moped as a bicycle. It further held that a bicycle was not a motor vehicle as defined and concluded that the legislature did not intend that a moped be considered a self-propelled vehicle. *Id.* at 1349.

I would hope that a moped is not a "motor vehicle or any self-propelled machinery or equipment" within the meaning and intent of Code § 46.1-350(a). For these reasons, I would reverse the conviction.