Commonwealth *v.* Gonsalves.

Commonwealth *vs.* Raul P. Gonsalves.

No. 01-P-428.

Barnstable. June 10, 2002. - November 21, 2002.

Present: Greenberg, Mason, & Green, JJ.

*Statute,* Construction. *Motor Vehicle,* All-terrain vehicle, Receiving stolen motor vehicle. *Practice, Criminal,* Instructions to jury, Presumptions and burden of proof, Loss of evidence by prosecution, Assistance of counsel. *Words,* "Motor vehicle."

This court concluded that the Legislature, by substituting the phrase "motor vehicle or trailer" for the term "automobile or motorcycle" contained in G. L. c. 266, § 28, intended to expand the scope of that statute to encompass a broad class of motorized vehicles; therefore, an all-terrain vehicle, i.e., a small motor vehicle with three or four wheels designed for use on various types of terrain, constituted a "motor vehicle" for purposes of charging a criminal defendant with receiving a stolen motor vehicle in violation of § 28. [507-509]

The evidence presented at the trial of an indictment charging receipt of a stolen motor vehicle in violation of G. L. c. 266, § 28, provided an ample basis for the jury to infer that the defendant knowingly possessed the stolen motor vehicle in question. [509-512]

At the trial of an indictment charging receipt of a stolen motor vehicle in violation of G. L. c. 266, § 28, the judge's instruction to the jury with respect to the prima facie effect of the presence of an altered vehicle identification number as it related to the element of scienter did not improperly shift the burden of proving knowledge of the alteration to the defendant, where the judge's instruction, which was derived from established case law, emphasized at least five times the Commonwealth's over-all burden of proving all elements of the offense. [512-513]

A criminal defendant charged with receipt of a stolen motor vehicle in violation of G. L. c. 266, § 28, failed to demonstrate that the Commonwealth's destruction of the motor vehicle in question deprived him of any exculpatory evidence [513], or that his trial counsel, by making a strategic decision to rest the defense primarily on the issue of identification and by failing to object to certain fair comment in the prosecutor's closing argument, had rendered ineffective assistance [513-514].

Indictment found and returned in the Superior Court Department on May 11, 1999.

A motion to dismiss was heard by *Gerald F. O'Neill, Jr.*, J., and the case was tried before him.

*Michael J. Traft* for the defendant.

*J. Thomas Kirkman*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A Superior Court jury convicted the defendant of receiving a stolen motor vehicle, G. L. c. 266, § 28. The vehicle in question was a four-wheel, all-terrain vehicle (ATV) used for off-road recreation and had been stolen from a dealer in New York. On appeal, the defendant argues that (1) an ATV is not a "motor vehicle" within the meaning of G. L. c. 266, § 28; (2) the Commonwealth's evidence that he was in possession of the ATV or, in the alternative, that he knew that it had been stolen, was insufficient as matter of law; (3) the judge's instructions shifted the burden of proof to the defendant; (4) the indictment should have been dismissed because of prosecutorial misconduct; and (5) trial counsel failed to provide constitutionally effective representation. We affirm.

1. *Applicability of the statute.* The defendant argues that the Commonwealth failed to prove that the property in question was a "motor vehicle" as that term appears in G. L. c. 266, § 28.[1] He points out that the Commonwealth charged him under § 28, rather than G. L. c. 266, § 60, which proscribes the purchase or receipt of stolen or embezzled *property* and contains a maximum penalty of five years in State prison, significantly less than the maximum of fifteen years contained in § 28. He argues that an ATV is more like a motorized bicycle (moped), which is excepted from the definition of "motor vehicle" in G. L. c. 90, § 1, the motor vehicle registration law.[2]

Statutory words are to be given their usual and ordinary

---

[1]General Laws c. 266, § 28, states, in pertinent part: "(a) Whoever . . . buys, receives, possesses, conceals, or obtains control of a motor vehicle or trailer knowing or having reason to know the same to have been stolen . . . shall be punished." Although this issue was not raised below, we must determine whether all of the necessary elements of the offense have been proven. *Commonwealth* v. *Grandison*, 433 Mass. 135, 140 n.8 (2001).

[2]The certificate of origin stated that the ATV was a four-wheel, off-road vehicle made by Yamaha that was "not manufactured for use on public streets, roads or highways." At trial, witnesses referred to the vehicle alternatively as a "quad" and a "four runner." The arresting officer, Marken, testified that the recovered vehicle was a Yamaha ATV, Banshee model. Another police officer

meaning in light of the aim to be accomplished by the Legislature. *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000). Prior to March 30, 1959, which was the effective date of G. L. c. 266, § 28, inserted by St. 1959, c. 160, § 2, the precursor to § 28 referred only to "automobile or motorcycle." By substituting the phrase "motor vehicle or trailer," the Legislature expanded the scope of the current statute. In view of this expansion, and in light of the use of the very general term "motor vehicle," we may infer an intent to encompass a broad class of motorized vehicles. See *See* v. *Building Commr. of Springfield*, 246 Mass. 340, 343 (1973) (revision read in light of preexisting statutes and as a continuation of earlier provision unless a clear indication of intent to change meaning); *Commonwealth* v. *Welosky*, 276 Mass. 398, 409 (1931), cert. denied, 284 U.S. 684 (1932).

The intention of the Legislature must govern in the construction of penal as well as other statutes, and laws are not to be construed so strictly as to defeat the obvious intention of the Legislature. That being the case, we give each word the meaning which, according to its ordinary usage, is consistent with the intent of the Legislature. *Commonwealth* v. *Smith*, 431 Mass. at 421. Webster's Third New International Dictionary 56(a) (3d ed. 1993) defines an "ATV" as a "small motor vehicle with three or four wheels that is designed for use on various types of terrain." Applying that definition here, and in view of the precise description of the vehicle contained in the record, we conclude that it fairly may be deemed a motor vehicle for the purposes of G. L. c. 266, § 28.

Arguing for a contrary approach, the defendant relies on several insurance law cases, the most recent of which is *Mac-Lean* v. *Hingham Mut. Fire Ins. Co.*, 51 Mass. App. Ct. 870, 872-875 (2001), which was decided after the trial in this case. There we held that an exception to an exclusion in a homeowner's indemnity policy applied in a situation where an individual suffered injuries as a passenger on a three-wheeled ATV. *Id.* at 874-875. In *MacLean*, we adverted to the definition "recre-

testified its value when new exceeded $5,000 and that it was capable of traveling at speeds over twelve miles per hour.

ational vehicle" used in G. L. c. 90B, which states that an ATV is a "motor vehicle." *Id.* at 873-874. However, we held that the ATV in question was not subject to motor vehicle registration under G. L. c. 90B, but, instead, was subject to "environmental registration" under G. L. c. 90B, thereby triggering the exception to the policy's motor vehicle exclusion for accidents. *Id.* at 872-873. See *Farm Family Mut. Ins. Co.* v. *Whelpley*, 54 Mass. App. Ct. 743, 744-746 (2002). Similarly, in *Arbella Mut. Ins. Co.* v. *Vynorious*, 34 Mass. App. Ct. 121, 124 (1993), we held that a snowmobile operated off a public way was not a motor vehicle requiring insurance coverage for accidents caused by "uninsured motor vehicles."

These insurance cases, however, are simply irrelevant to the present case. Both were addressed to the very narrow issue of whether the Legislature intended off-road vehicles to be insured to minimize the catastrophic financial loss for persons injured by the negligence of tortfeasors. See *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 177 (1981); *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 454 (1985). By contrast, G. L. c. 266, § 28, is concerned with preventing the theft of motor vehicles by enhancing the criminal sanctions for stealing or possessing same. In view of the totally different aims underlying the two statutes, we see no difficulty in according a different meaning to the generic phrase "motor vehicle" in each. Indeed, such an approach is the only means for enacting the disparate goals of each provision. Thus, assuming that the cases relied upon by the defendant hold that an ATV is not a motor vehicle for the purposes of G. L. c. 90, § 1, this determination in such an alien context does not resolve that point for the purposes of § 28.[3]

2. *Sufficiency of the evidence.* The evidence presented at trial,

---

[3]The notion of using the definition of "motor vehicle" as it appears in insurance contract cases has been rejected in other courts as well. In *United States* v. *Stancil*, 422 A.2d 1285, 1287 n.6 (D.C. 1980), for example, the District of Columbia Court of Appeals held that the distinctions among classes of motor vehicles for purposes of registration statutes — the precise argument raised by the defendant here — have little significance in the context of penal statutes aimed at deterring theft of motor vehicles. The court pointed out that registration statutes are concerned with the identification of the vehicle and its owner, not theft. *Ibid.* Along the same lines, the Indiana Court of Appeals declined to apply the definition of "motor vehicle" found in a remedial statute

presented in the light most favorable to the government, was as follows: On December 27, 1998, Barnstable police Officer Charles Marken saw a man driving an ATV along Route 28, a State highway, at about 9:00 P.M. It was nighttime, and as Marken followed behind the ATV, he momentarily lost sight of it. Marken then alighted from his cruiser and walked toward the driveway of a house where he thought the ATV had gone. There he observed tire tracks which resembled those made by that type of vehicle. Just then, a truck driven by the defendant's brother, who was known to Marken, pulled up. After a brief conversation with the defendant's brother, Marken followed the tire marks to the rear of the house. Suddenly, a man wearing a ski mask, which revealed only his eyes, nose, and mouth, emerged from the darkness. Marken queried him concerning the whereabouts of the ATV. When the man, later identified by Marken as the defendant, claimed ignorance, Marken continued his search and found the vehicle in the backyard.

The officer testified that the defendant then approached the ATV and, using a key, began to unfasten a lock attached to one of the rear tires. At this juncture, the defendant was joined by his brother. Marken told the defendant to back off. Concerned for his safety, Marken threatened to shower the defendant and his brother with "pepper spray." Both men then ran to the front of the house, the defendant making off with the lock, which he had succeeded in removing from the wheel of the ATV.

Because Marken had recognized both men, he did not pursue them. Instead he continued his perusal of the ATV, and noticed that the last two of the seventeen numbers of the vehicle's identification number (VIN) had been altered by deep scratches on the plate. The ATV was transported to the police station, where in due course police determined that it had been stolen from a dealer in Queensbury, New York, about three months prior to Marken's encounter with the defendant.

This evidence provided an ample basis for the jury to infer that the defendant had possessed the stolen ATV. Not only did Marken observe the defendant in close proximity to where the

regulating traffic violations to the State's automobile theft statute. See *Chapman* v. *State*, 650 N.E.2d 764, 766 (Ind. Ct. App. 1995). See also *Schevling* v. *State*, 426 So. 2d 580, 581 (Fla. Dist. Ct. App. 1982).

vehicle had just been parked, but he also testified that the defendant had the key to the wheel lock on the ATV. Even apart from the strong circumstantial evidence that the defendant had been the driver observed by Marken, the use of this key alone likely would be sufficient to show the requisite control over the ATV to establish possession for the purposes of § 28. In any event, all of the evidence, taken together, warranted a finding by the jury that the defendant had possessed the stolen ATV.

As for proof of the defendant's knowledge that the ATV was stolen, the government's case rested on circumstantial evidence. See *Commonwealth* v. *Dellamano*, 393 Mass. 132, 138 (1984). In the first instance, Marken's testimony indicated that the defendant displayed strong consciousness of guilt, including his initial disavowal of any knowledge of the ATV coupled with his subsequent use of a key to remove the lock on the vehicle's wheels. In addition, the defendant's flight from the officer was probative of the same point. Further, the VIN number on the ATV had been defaced. The second paragraph of G. L. c. 266, § 28(*a*), states: "Evidence that an identifying number or numbers of a motor vehicle or trailer . . . has been intentionally and maliciously removed, defaced, altered, changed, destroyed, obliterated, or mutilated, shall be prima facie evidence that the defendant knew or had reason to know that [the vehicle] had been stolen." While it is true that possession of a vehicle with an altered VIN, like possession of a recently stolen motor vehicle, cannot, by itself, satisfy the government's ultimate burden of proof, see *Commonwealth* v. *Hunt*, 50 Mass. App. Ct. 565, 569 (2000), when considered in conjunction with the other evidence here, there was enough to satisfy the government's burden of proof.[4] See *Commonwealth* v. *Lati-*

---

[4]The defendant contends that the fact that the blemishes on the VIN were not an obvious attempt to disguise the vehicle's origin, and the fact that the VIN plate was located on an obscure shaft of the vehicle, both militate against the triggering of the statutory presumption. The latter proposition deviates from a plain reading of the statute. The defendant offers no case in support of the argument, and we have been unable to find any. At best, those arguments run to the weight of the government's case, not to its legal sufficiency. As an aside, we note that a photograph put in evidence at the conclusion of the government's case showed that the last two VIN numbers were obliterated beyond recognition. This selective defacement was enough to allow the jury

*more*, 378 Mass. 671, 676-678 (1979). See also *Commonwealth v. Cove*, 427 Mass. 474, 475 (1998).

3. *Jury instructions.* The judge charged the jury with respect to the elements of the offense and read the portion of the statute that dealt with the prima facie effect of the presence of an altered VIN as it related to the element of scienter. He told the jury that prima facie evidence, if unexplained or uncontradicted, is sufficient to establish the issue it is designated to support. However, he went on to explain that the existence of the underlying fact, i.e., scienter, is not presumptively established, but must be proven beyond a reasonable doubt. There was no objection to this portion of the charge registered at trial. On appeal, the defendant argues that this instruction shifted the burden of proving knowledge of the alteration to the defendant. There is nothing to the argument.

A close reading of the entire charge indicates that the judge appreciated the difficulty of incorporating the presumption language of the statute into his instruction, and that he emphasized at least five times the government's over-all burden of proving all elements of the offense. The instruction tracks the language approved in *Commonwealth v. Lykus*, 406 Mass. 135, 144 (1989). Even so, the defendant contends that this portion of the instruction is similar to the one disfavored in *Commonwealth v. Burns*, 388 Mass. 178, 180-183 (1983).

The instant case, however, is distinguishable because, unlike *Burns*, the judge gave an instruction derived from established case law. Rather than place the burden of explaining possession of recently stolen property on the defendant — the flaw found in the *Burns* case — the judge adhered to the proper course by advising the jury that the use of prima facie evidence, sufficient to establish a presumption in favor of the scienter, "carries no particular presumption of validity." He emphasized that the presumed fact must be proven beyond a reasonable doubt. There was no error, let alone a substantial risk of a miscarriage of justice. Compare *Commonwealth v. Johnson*, 405 Mass. 488, 490 (1989) (no substantial risk of miscarriage of justice resulted

to infer that the VIN number had been intentionally and maliciously altered. G. L. c. 266, § 28.

from erroneous instruction regarding prima facie effect of certificate of analysis).

4. *Prosecutorial conduct.* Nearly eight months after police seized the ATV, the defendant filed a pretrial motion to inspect it. After a judge allowed the motion, the defendant attempted to have an investigator photograph the ATV, but discovered that the police had mistakenly released it to a salvage company. The defendant moved to dismiss the indictments, maintaining that the destruction of the ATV prevented him from using it as a possible source of exculpatory evidence. However, the motion judge (who was also the trial judge) held a hearing and found that the police had taken photographs, which were available to the defendant, showing the altered VIN and engine number. Therefore, he concluded that the defendant had not been deprived of any exculpatory evidence. This was adequate to protect the defendant's rights; there was no abuse of discretion. See *Commonwealth* v. *Henderson*, 411 Mass. 309, 312 (1991); *Commonwealth* v. *Lopez*, 433 Mass. 406, 412 (2001).

5. *Ineffective assistance of counsel.* The defendant argues that he received flawed representation because trial counsel (1) made a conscious decision to rest the defense primarily on the identification issue, rather than developing an alternative defense based on lack of scienter; and (2) failed to object to the prosecutor's suggestion in closing argument that the defendant's brother, who was the defendant's alibi witness, had not promptly informed police that the defendant had been inside a motel room at the time Marken discovered the stolen ATV.

During the course of the trial, the judge had a side bar discussion with trial counsel during which he pointed out that counsel had overlooked the scienter issue. Contrast *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 393 (1997) (ineffective assistance resulted where trial counsel neglected to ask for a forensic test, the results of which might have seriously undermined the Commonwealth's case). Counsel implicitly indicated that this was a strategic choice. As such, it cannot provide a basis for an ineffective assistance claim unless manifestly unreasonable. That was not the case here.

The tactical choice might have been open to question were it not for the otherwise consistent and forceful thrust of trial

counsel's cross-examination of Marken on the identification is-
sue, his lucid presentation of the defendant's brother's alibi
testimony, and his forceful closing argument emphasizing these
themes. Given the evidence against the defendant, this was not
an unreasonable approach. Counsel's strategy, while ultimately
unsuccessful, did not rise to the level of serious incompetency,
inefficiency, or inattention of counsel that must be found for a
conviction to be overturned. *Commonwealth* v. *Saferian*, 366
Mass. 89, 96 (1974). In the end, the jury's verdict was largely
the product of the government's overwhelming inculpatory
evidence.

As for trial counsel's failure to object to that portion of the
prosecutor's closing argument that brought to the jury's atten-
tion the fact that the defendant's brother did not inform the
police that the defendant was at a motel at the exact time the
brother conversed with Marken in his yard, we detect no error.
The defendant's chief complaint is that the argument had no
basis in the record. It appears, however, that the defendant's
brother agreed on cross-examination that he had not disclosed
the defendant's whereabouts to anyone before the trial. It was,
therefore, fair comment by the prosecutor. See *Commonwealth*
v. *Egardo*, 426 Mass. 48, 52-53 (1997).

*Judgment affirmed.*